THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
EDWARD LEONARD GRAHAM, Appellant.

Fourth Department, April 6, 1979

**APPEARANCES OF COUNSEL**

*Edward J. Nowak (William Pixley* of counsel), for appellant.

*Lawrence T. Kurlander, District Attorney (Douglas Jones* of counsel), for respondent.

HANCOCK, JR., J.

On his appeal from judgments of conviction of two counts of robbery in the second degree (Penal Law, § 160.10), defendant's chief contention is that the trial court erred in admitting under CPL 60.25 the identification testimony of a witness, Butler, who could not identify the defendant at the *Wade* hearing or at trial.

The convictions stem from an incident in which Fred Dean, returning home from work on June 19, 1976 in Rochester, was knocked to the floor of the vestibule of his apartment building by two assailants and robbed of his wallet which contained $14. Dean, who was thrown face down, could not give any description of the robbers except that they were Black.

George Butler, the manager of the apartment building, testified at the pretrial identification hearing *(United States v Wade,* 388 US 218) and at trial that he came upon the scene as the two men were bending over Dean and going through his pockets. One of them (who, it appears from the evidence, was defendant) was facing toward him. Butler observed the two men in the lighted vestibule for approximately 30 to 45 seconds at a distance of less than 10 feet before they jumped up and ran away. After pausing to determine that Dean was not seriously hurt, Butler followed them at a distance of about 25 feet down the lighted street. They were joined by a woman. He flagged an ambulance and continued the pursuit in the ambulance to an alley where he pointed out the two assailants and the woman to the attendants.

When the police arrived at the scene shortly thereafter, Butler gave them a description of the robber who had been facing him as "lanky and tall," 6 feet—10 inches tall, 25 to 30 years of age, with straggly hair and goatee, and wearing a three-quarter length leather coat and a cap. He described the other man as around 5 feet—10 inches tall, 25 to 30 years of age, and "fairly well-built." He testified that as he was being driven to the Public Safety Building by a plainclothes detective for an interview, he was told that the suspects would be there.

Thirty to 45 minutes later, while Butler was in an office of the Public Safety Building and in the process of making a telephone call, three people—two males and a female—accompanied by police walked by him into another room. Butler

testified that someone asked him if the people who had just passed by were the ones involved in the robbery. He replied that they were the ones.

Butler could not, at either the *Wade* hearing or at trial, identify the defendant as the assailant who had been facing him at the scene of the crime and whom he had recognized later the same evening. However, he testified at trial that he was "very positive" that the two persons he saw at the Public Safety Building who, he later learned, were named Graham and Jamison, were the same persons he had seen robbing Dean.

Detective John Vassallo testified that on June 19, 1976, in connection with an investigation into a robbery at 500 South Avenue (Dean's apartment building), he took George Butler to an office in the Public Safety Building for the purpose of preparing paper work in the case. He stated that, while there, Butler saw Graham and Jamison brought in by two police officers. Butler pointed and said: "Those are the two guys that robbed him." Vassallo then told Butler that the men Butler had just identified were Graham and Jamison. Vassallo denied that he had told Butler, while en route to the Public Safety Building, that the suspects would be there. He stated that Butler's identification was spontaneous and not in reply to a question.

At the time of trial the defendant had no goatee. None of the officers involved in the arrest and investigation of the Dean robbery—Detective Vassallo, Officer Gagliano and Officer Lancer[1]—could make an in-court identification of the defendant as the man known as Graham whom they had seen at the scene of the arrest and at the Public Safety Building on June 19, 1976. Vassallo, however, did recall that the suspect, Graham, had had a long goatee and long straight hair.

Jamison, at the trial, pointed to the defendant, Graham, in the courtroom as the person with whom he had been arrested in connection with the Dean robbery. He admitted his guilt in the robbery. He denied, however, that Graham had had any part in it and claimed that he had committed the crime in the company of a female Renita Colon and a male whose name he

---

[1]. Officer Lancer, who interviewed Graham at the Public Safety Building on the evening of the robbery, testified that Graham told him: "You've got me", but could neither describe Graham's appearance on June 19, 1976, nor make an in-court identification of the defendant as the man he spoke with.

could not remember. There was no question that the defendant Graham was with him when he was apprehended.

■ Based on Butler's description of his encounter with the suspects at the police station and without regard to Vassallo's testimony, defendant argues that the actions of the police and the other circumstances surrounding the identification were unduly suggestive and that the court should have excluded all evidence of it as not "consistent with such rights as an accused person may derive under the constitution of this state or of the United States" (CPL 60.25, subd 1, par [a], cl [ii]). We disagree.

There is nothing in Butler's testimony to suggest that the incident had been contrived, that the police had taken steps to place Butler where he would see the suspects or that the encounter was not the result of chance. Such accidental " 'showups' have been held to be 'not unnecessarily or impermissibly suggestive since unavoidable and not due to the fault of the police or prosecutor.' (Sobel, Eye Witness Identification, p 74; *Mock v Rose,* 472 F2d 619.)" *(People v Gonzalez,* 61 AD2d 666, 671, affd 46 NY2d 1011; see *People v Logan,* 25 NY2d 184, 193, cert den 396 US 1020; *People v La Brake,* 51 AD2d 609.)

Nor does it appear that the identification was the product of suggestion. Butler was busy making a telephone call when the two men walked by and, although, according to Butler, "someone" in the room asked him if they were the ones who robbed Dean, it appears that his statement of recognition of Graham and Jamison was an immediate and unequivocal response, given unhesitatingly without prompting or suggestion. If Vassallo's testimony is accepted, the identification was unquestionably spontaneous. According to Vassallo, Butler, who had no reason to believe that the suspects would be there, volunteered, when he saw Graham and Jamison: "Those are the two guys that robbed [Dean]." On the version of either Vassallo or Butler, the identification was immediate, definite and not prompted by police conduct. Accordingly we hold that the procedures employed by the police were not inconsistent with the defendant's constitutional rights (CPL 60.25, subd 1, par [a], cl [ii]; see *People v Gonzalez, supra; People v Smith,* 46 AD2d 639, affd 38 NY2d 882).

■ Even if we were to conclude that the police conduct had been impermissibly suggestive, it would not necessarily follow that Butler's out-of-court identification should have been ex-

cluded. Under the rule established by *Manson v Brathwaite* (432 US 98) and *Neil v Biggers* (409 US 188) such evidence would be admissible if, upon an examination of the totality of circumstances, it appears that "despite the suggestive aspect, [it] possesses certain features of reliability." *(Manson v Brathwaite, supra,* p 110; see *People v Gonzalez, supra.)* In determining reliability under the *Manson—Biggers* test, "[t]he factors to be considered are * * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *(Manson v Brathwaite, supra,* p 114; see *Neil v Biggers, supra,* pp 199-200.)

█ On all the evidence, including that of Officer Vassallo,[2] we find that Butler's unequivocal and on-the-spot identification, made within one hour of his witnessing the robbery, was reliable. The vestibule where the crime occurred was well lighted. Butler had ample time at the scene and while he was following Graham and Jamison on foot and in the ambulance to make detailed and accurate observations. That he did so is evidenced by the accuracy of the descriptions he gave the police.

██ Contrary to defendant's position, we hold that reliability is the "linchpin" of admissibility in cases involving CPL 60.25 and 60.30 pretrial identifications *(Manson v Brathwaite, supra,* p 114). We find no support for the argument that under those statutes admissibility must be determined on the basis of rulings (made prior to the Supreme Court's decision in *Manson* (on June 16, 1977) which held that a suggestive identification must "per se" be excluded even if the totality of circumstances surrounding it indicates that it is reliable. The authorities support the opposite view. (See *People v Gonzalez, supra; People v Goldston,* 59 AD2d 704; Pitler, New York

---

2. There was no objection to Vassallo's testimony concerning Butler's actions at the Public Safety Building and his spontaneous remark: "Those are the two guys that robbed him" when Graham and Jamison passed by him. Such testimony was proper in any event. Similar testimony by a police officer who observed an out-of-court identification of the defendant by a witness and testified to the fact of such identification in court has been allowed and held not to be hearsay by the Court of Appeals in *People v Nival* (33 NY2d 391, app dsmd 417 US 903) and *People v Lagana* (36 NY2d 71, cert den 424 US 942).

Criminal Practice, § 12.8, p 606, n 62 [1979 Cumulative Supplement, p 383]; 3 Zett, New York Crim Prac, par 21.11, p 21-34 [Dec., 1977 Supplement, p 105, n 17.1]; cf. *United States v Marchand,* 564 F2d 983, 995-996, cert den 434 US 1015, affirming a conviction in the Federal District Court of Vermont and applying the *Manson* "reliability" test rather than the "per se" rule to the question of the admissibility of pretrial photographic identification evidence.)

■ Defendant contends, relying solely on McKinney's Practice Commentary to CPL 60.25,[3] that Butler's testimony that he was "very positive" about his identification of Graham when he saw him at the Public Safety Building did not comply with the statute. While it might have been better if Butler had also stated that at the time of his testimony he was "presently certain" about the identification (as suggested by the Practice Commentary), it does not follow that the admission of the testimony about his past certainty was error. Defendant had full opportunity on cross-examination to test Butler's recollection and his present and past states of mind. In any event, there was no objection and the error was not preserved for appeal (CPL 470.05, subd 2; see *People v Cook,* 42 NY2d 204, 209).

Likewise, there is no substance to defendant's claim that the prosecution did not establish that he was in fact the person whom Butler had recognized on the prior occasion as required by CPL 60.25 (subd 1, par [b]). The testimony of Detective Vassallo, Officer Gagliano and Officer Lancer established that it was the man known as Graham who was arrested with Jamison for the Dean robbery whom Butler saw at the Public Safety Building. Jamison's testimony proved that that man was the defendant. Such testimony was sufficient to provide the necessary link between the defendant and the person the witness had previously identified. (See *People v Lagana,* 36 NY2d 71, cert den 424 US 942; *People v Nival,* 33 NY2d 391, app dsmd 417 US 903.)

---

3. The Practice Commentary (Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 60.25, p 242) states, in pertinent part: "evidence concerning the prior recognition should be received * * * not * * * in the form of testimony by the witness that he *was* certain on such prior occasion that the man whom he then saw was the one who robbed him * * * [but rather as testimony] that he is certain *now*—as he sits on the witness stand—that the man whom he saw in the police station shortly after the holdup is the man who robbed him."

In sum, we hold that there was compliance with the requirements of CPL 60.25. The confrontation was not impermissibly suggestive (see *People v Gonzalez, supra; People v Smith, supra),* and the identification was reliable, in any event, under the totality of circumstances (see *Manson v Brathwaite, supra; People v Gonzalez, supra; People v Goldston, supra).* The evidence of Butler's previous identification of defendant was, therefore, properly admitted.

■ The several other grounds urged for reversal require no discussion except for two which we shall mention briefly: the failure of the court to charge that Jamison's testimony required corroboration and the court's noncompliance with CPL 400.21 in sentencing defendant.

There was no request that the court charge that Jamison's testimony was that of an accomplice and that it required corroboration (CPL 60.22, subds 1, 2). Nor was there an exception taken to the charge. Thus, the error was not preserved (see CPL 470.05, subd 2; *People v Gruttola,* 43 NY2d 116, 123; *People v Cook, supra).* Moreover, Jamison's testimony was almost entirely exculpatory and could not have provided the basis for defendant's conviction. There was, in any event, ample corroborative evidence.

■ We hold that there was substantial compliance with the requirements of CPL 400.21 in sentencing defendant as a second felony offender. (Cf. *People v Linderberry,* 55 AD2d 992; *People v Gonzalez,* 54 AD2d 1070; *People v Smith,* 52 AD2d 1086; *People v Presley,* 49 AD2d 804; *People v Bryant,* 47 AD2d 51.) The court did not follow the preferred practice of expressly advising the defendant of the legal effect of the second felony offender finding and of defendant's right to question the constitutionality of any predicate felony. Nevertheless, the evidence is that defendant and his counsel were personally served with a copy of the second felony offender information which the defendant examined and that the defendant unequivocally admitted the prior conviction.

The judgment of conviction should be affirmed.

DILLON, P. J., SIMONS, CALLAHAN and MOULE, JJ., concur.

Judgment unanimously affirmed.