■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRYL KING, Appellant. — Appeal by defendant, by permission, from an order of the Supreme Court, Kings County, entered June 5, 1979, which, after a hearing, denied his motion, pursuant to CPL 440.10, to vacate a judgment of conviction of the same court, rendered May 24, 1971, convicting him of murder, manslaughter in the second degree, attempted robbery in the first degree, attempted grand larceny in the third degree, assault in the first degree (two counts), and possession of a dangerous weapon as a felony, upon a jury verdict, and imposing sentence. Order affirmed. Defendant stands convicted of an attempted robbery in a Wetsons restaurant on May 25, 1970, and murdering off-duty Police Officer Miguel Sirvent during the course of the attempted robbery. He was charged in the indictment with acting in concert with another person actually present, never apprehended or identified. At the trial, defendant was positively identified as the perpetrator by Lorraine Hawthorne, an employee of Wetsons, and Oliver Ross, a friend of one of defendant's brothers. Ms. Hawthorne testified that she was sure defendant was the perpetrator because he had tiny holes or blemishes on his face, which she noticed at the time of the crime. Ms. Hawthorne further testified that she had seen a man who "looked very much like" defendant, earlier that evening, talking to the restaurant manager about a job. The manager and defendant both testified that they discussed the possibility of defendant getting a job earlier that evening. However, defendant claimed that he did not return to Wetsons that evening, and was home at the time of the crime. Defendant's judgment of conviction was affirmed by this court and by the Court of Appeals (see *People v King,* 42 AD2d 587, affd 33 NY2d 917). Oliver Ross later allegedly recanted his testimony, and defendant moved to set aside the judgment of conviction pursuant to CPL 440.10. On January 22, 1976 that motion was denied, and on April 6, 1976 defendant's application for leave to appeal to this court was denied. Thereafter, defendant made this second application to set aside the judgment of conviction pursuant to CPL 440.10, alleging that certain exculpatory evidence was withheld by the prosecution. Our examination of the record reveals that certain of the allegedly "suppressed" information was known to defense counsel. Defense counsel knew that a red "getaway" car was possibly involved in the crime. Further, at the *Wade* hearing, the arresting officer gave defense counsel that portion of his notes which contained Lorraine Hawthorne's initial description of the perpetrator. From those notes, the officer prepared one of the police reports which defendant contends was improperly withheld. Since the police report was merely cumulative, the fact that it was withheld cannot be deemed prejudicial (see *People v Consolazio,* 40 NY2d 446). Moreover, the initial conclusion of the police set forth in the ballistics report, that defendant's accomplice, and not defendant, fired the fatal shot, was made public in newspaper articles in the *Sunday Daily News, New York Times* and *New York Post.* In any event, the bare conclusion that the accomplice, and not defendant fired the fatal shot, cannot be deemed exculpatory (see Penal Law, § 20.00). Much of the remaining allegedly exculpatory evidence is lacking in materiality or exculpatory value. The fact that defendant's fingerprints were not found at the scene of the crime is not material, in light of the fact that the

crime occurred in a busy fast-food restaurant (see *United States v Durgin,* 444 F2d 308, cert den 404 US 945). Similarly, the fact that there was no evidence that while in the army the defendant procured the weapon used in the crime is irrelevant, since he could have obtained the weapon elsewhere. Furthermore, the prosecutor's improper cross-examination of defendant with respect to the holster which he brought back from the army, was considered on defendant's direct appeal and therefore cannot constitute the basis for relief pursuant to CPL 440.10 (see CPL 440.10, subd 2, par [a]). Defendant also contends that the identity of certain witnesses who could offer material, exculpatory testimony was withheld. This contention is not borne out by the record. Defendant was certainly aware of the identity of one of these witnesses, the victim's widow, who testified at trial. Another witness, who was a customer in Wetsons at the time of the crime, gave a physical description of the perpetrator which was similar to Ms. Hawthorne's description, and testified before the Grand Jury that defendant was the perpetrator. Since his observations inculpated the defendant, the prosecutor was not obliged to disclose his identity (see *People v Andre W.,* 44 NY2d 179, 185). Two other witnesses could only offer vague descriptions of individuals whom they observed fleeing from the scene of the crime. At the hearing on defendant's CPL 440.10 application, the only arguably exculpatory testimony was offered by Michael Coward, who came forward nearly seven years after the crime. Coward testified that he was a passenger in a bus parked in front of Wetsons at the time the crime in question was committed and was a witness to the crime. He claimed that he recognized the perpetrators as men whom he had seen around the neighborhood. Coward was a friend of defendant's brothers, and consequently knew defendant. He claimed that defendant was not one of the perpetrators. Coward also claimed that he attended a lineup several days after the crime, told the police that he recognized defendant in the lineup and told them that none of the men in the lineup were present during the crime. That testimony was refuted by Detective Fred Lambert who testified that Coward did in fact attend a lineup, and when he saw defendant, said "we all live in the same neighborhood. We don't rat each other out. I'm not going to say that he did do it; I'm not going to say that he didn't do it". The hearing court believed Fred Lambert and found Coward's testimony to be incredible. We find no reason to disturb that determination, especially in light of Coward's incredible assertion that he did not know that defendant was charged with the crime until nearly seven years later. Defendant's capture was publicized in three major New York newspapers, and on television. Coward acknowledged that he saw defendant in the lineup, lived in the same neighborhood, and met defendant's brothers occasionally during his seven-year silence. It transcends belief that he was unaware of defendant's arrest. Thus, we accept Detective Lambert's testimony that Coward never gave any exculpatory information to the police. Therefore, Coward's testimony may not constitute the basis for granting a new trial as "newly discovered evidence" (see *People v Salemi,* 309 NY 208, 215-216; *People v Bridget,* 73 AD2d 291). We have considered defendant's remaining contentions and find them to be without merit. Damiani, J. P., O'Connor, Weinstein and Thompson, JJ., concur.