THE PEOPLE OF THE STATE OF NEW´YORK, Respondent, v
HAROLD S. JONES, Appellant.

Third Department, February 18, 1982

APPEARANCES OF COUNSEL

*E. Stewart Jones, Jr. (Robert M. Cohen* of counsel), for appellant.

*Charles J. Wilcox, District Attorney,* for respondent.

OPINION OF THE COURT

WEISS, J.

At about 5:20 P.M. on January 2, 1979, during the robbery of a grocery store in the City of Rensselaer, Paula Fedele, the 15-year-old daughter of the owner, and a 17-year-old male customer, were both shot. That same afternoon, defendant's parole officer and policemen confronted defendant and his wife and twice, upon consent, searched their apartment, seizing certain articles of clothing. Later that day, defendant accompanied police for questioning, and at about 8:00 P.M. he participated in a lineup at the hospital. The girl made positive identification but the boy was uncertain. Defendant was arrested and taken to State Police barracks at Loudonville where further questioning ensued. He was subsequently indicted by a Grand Jury.

Following unsuccessful applications which were the subject of *Wade* and *Huntley* hearings, defendant was found guilty upon trial and given a 15-year to life sentence as a persistent violent felony offender, consecutive to any undischarged term. This appeal ensued.

Defendant first contends that he was deprived of a fair trial by the People's failure to disclose exculpatory evidence in violation of his rights under *Brady v Maryland* (373 US 83). The defense was based upon alibi and mistaken identification. Defense counsel repeatedly demanded exculpatory material in the possession of the prosecutor,

arguing that it was for the court to determine, after *in camera* examination, the relevancy and materiality of such material. Although certain material was delivered and other items already disclosed at the *Wade* hearing, defendant argues that additional statements helpful to his case were not timely disclosed.

At the outset, we note that copies of the statements in issue are not part of this record, thereby limiting evaluation of relevance or materiality (*People v Consolazio,* 40 NY2d 446, 452, cert den 433 US 914) to information included in the record and briefs. It is now axiomatic that, while a prosecutor "must have *some* discretion in determining which evidence must be turned over to the defense" (*People v Fein,* 18 NY2d 162, 171-172), where there is "some basis for argument that material in the possession of the prosecutor might be exculpatory, deference to the prosecutor's discretion must give way, and the duty to determine the merits of the request for disclosure then devolves on the trial court" (*People v Consolazio, supra,* p 453). The evidence must be material to the defense and would have, in any reasonable likelihood, affected the judgment of the jury (*Giglio v United States,* 405 US 150, 154). Neither good faith nor negligence of the prosecutor is excusable for failure to disclose evidence found to qualify as highly material to the defense (*Giglio v United States, supra; People v Simmons,* 36 NY2d 126, 131; *People v Testa,* 48 AD2d 691, 692, affd 40 NY2d 1018, cert den 431 US 925). Within these guidelines, we examine the evidence alleged to have been wrongfully withheld. The photographs initially shown Paula Fedele were already in evidence at the *Wade* hearing. Evidence inculpatory in nature and already known to the defense is not *Brady* material (*People v Fein, supra,* p 170). One statement demanded never existed. The other statements, not related to identification, were of no value in the alibi defense, and they only presented a hope that they would lead to new helpful information. Police reports were ultimately disclosed. The release of a questionable suspect was not exculpatory and need not have been disclosed (*People v King,* 79 AD2d 992, 993). In sum, the defense failed to show that withheld evidence was so material or relevant to defendant's case that we should

find that defendant was deprived of his due process rights and a fair trial (*Giglio v United States, supra,* p 154; *People v Simmons, supra,* p 132). We find the error, if any, was harmless (*People v Consolazio, supra,* p 453). Finally, "[w]e do not * * * automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict'" (*Giglio v United States, supra,* p 154).

■ Defendant next contends that the preliminary identification from photographs and a lineup in the hospital were impermissibly suggestive, thereby tainting the in-court identification. After a *Wade* hearing, the trial court held that the police were in no way coercive or suggestive, nor did they violate defendant's rights, or the law. We agree. We find that under the rule expressed in *Manson v Brathwaite* (432 US 98) and *Neil v Biggers* (409 US 188) reliability is the "linchpin" of admissibility in pretrial identifications. Examined in the "totality of the circumstances", the identification here possesses features of reliability (*People v Graham,* 67 AD2d 172, 177; *People v Gonzalez,* 61 AD2d 666, 670, affd 46 NY2d 1011). Paula Fedele viewed defendant within 24 hours of the shooting, after a face-to-face confrontation without diversion. Her identification of defendant passes the *Manson-Biggers* test (see, also, *People v Graham, supra,* p 177). Testimony at the *Wade* hearing and trial dispels arguments that her physical and mental condition was adversely affected by sedatives. The trial court's findings were, under the "totality of the circumstances", proper (*Manson v Brathwaite, supra; Neil v Biggers, supra; People v Graham, supra,* p 177).

■ Defendant contends that prosecutorial misconduct prevented a fair trial in that the prosecutor was permitted to accomplish by indirection that which was prohibited by direction (see *People v Isaacson,* 44 NY2d 511, 522). Although reference to prior felony convictions was precluded by a *Sandoval* ruling, defendant was cross-examined about his knowledge of "alibi", and "whether on two previous occasions he said he was at addresses different from those at which he was alleged to have been". No reference was made to any criminal act. Objections were sustained but no

curative instructions were requested or made. Subsequently, the prosecutor asked defendant about his heroin habit, his relationship with a prostitute, practicing dry firing of a handgun, and about an alleged child beating episode where police were called. Defendant argues that these questions, all answered negatively, were improper, prejudicial, and tend to show that he is of a criminal bent or character or demonstrate a propensity to commit the crime charged, rather than to impeach his credibility. We disagree. Although no objection was taken to these questions, we may, in the interests of justice, consider questions of law or fact adversely affecting defendant (CPL 470.15, subds 3, 6, par [a]; *People v Robinson,* 36 NY2d 224; cf. *People v Fragale,* 60 AD2d 972). We find that the subject inquiries related to credibility, motive or an element of the crime charged (*People v Sandoval,* 34 NY2d 371, 376). The *Sandoval* rule is not absolute, giving way when evidence of a prior crime is of probative value which can outweigh its potential for prejudice (*People v Ventimiglia,* 52 NY2d 350, 359). The questions sought to impeach the credibility of the alibi defense and went to defendant's honesty and integrity (*People v Duffy,* 36 NY2d 258, 262, cert den 423 US 861). " 'Credibility is [to be] determined by the trier of facts who has the advantage of observing the witnesses and necessarily is in a superior position with respect to that aspect than an appellate court which reviews but the printed record' " (*People v Stroman,* 83 AD2d 370, 372). We conclude that these questions were properly permitted (*People v Ventimiglia, supra,* p 361).

While certain portions of the prosecutor's summation might have better been left unsaid, any error committed was harmless in the light of the evidence presented and the inadequacy of the alibi defense (*People v Crimmins,* 36 NY2d 230).

■ Defendant's remaining argument that his statement was involuntary is without merit. The two-hour interrogation producing the inculpatory statement, when examined in the "totality of the circumstances", did not rise to the level required to demonstrate that defendant's will had been overborne or his capacity for self-determination critically impaired (*People v Anderson,* 42 NY2d 35, 41). The

ultimate question of voluntariness and whether the People sustained their burden of proof was left to the triers of the facts, whose findings this court will not readily disturb (see *People v Stroman, supra*).

■ Finally, the sentence, which is neither harsh nor excessive, is within the statutory provisions (Penal Law, § 70.08, subd 3, par [a]), and was required to be consecutive for a persistent violent felony offender (Penal Law, §§ 70.06, 70.25). This court will not, in the absence of clear abuse, disturb the sentencing discretion of the trial court (*People v Downs,* 77 AD2d 740, 742, application for lv to app den 51 NY2d 773; *People v West,* 52 AD2d 968).

The judgment should be affirmed.

MAHONEY, P. J., SWEENEY, KANE and CASEY, JJ., concur.

Judgment affirmed.