OPINION OF THE COURT
Charles J. Tejada, J.
The defendant, Boris Ellis, was arrested and subsequently indicted on two counts of assault in the second degree, intimidating a witness in the third degree and menacing in the second degree. The People, after the complainant’s recantation during her trial testimony, moved in limine for a ruling allowing them to call an expert witness on domestic violence to testify regarding the "battered woman syndrome” (hereinafter referred also to as BWS).
BACKGROUND
The complainant is the defendant’s wife. Shortly after the defendant’s arrest, she testified at the Grand Jury and her testimony not only corroborated the testimony of other wit *947 nesses with respect to many of the charges set forth against the defendant but also gave graphic descriptions of physical and psychological abuse by the defendant over a prolonged period of time. Included in her testimony was a litany of violent acts directed at her by the defendant, from May 1994 to August 1995. The violence included threatening to kill the complainant on numerous occasions, including one instance involving the placing of a gun to the complainant’s head and pulling the trigger, strangling her with a plastic string, beating her with a metal teapot with such force that the handle broke, burning her buttock with an iron, causing bruises by hitting her with a cable wire across the back, destroying the marital residence and its furniture, threatening to take the children, forcing her to flee her home and temporarily relocate with family members, confronting and threatening the complainant’s family, with whom the complainant sought refuge, requiring police intervention, slamming her head into a closet resulting in the need for her to receive "stitches” to close the wound, assaulting her with a bed board causing a leg injury, and threatening retaliation from his jail cell, at the police precinct, after his arrest.
Although these acts occurred in a period of over a year, except for a brief period when she sought refuge with relatives, the complainant did not leave her husband nor seek protection from the police or any one else.
After the defendant’s arrest, the complainant cooperated with the prosecution, allowing for the taking of photographs of injuries and the collection of medical records. However, the complainant refused to cooperate with the District Attorney’s office after the defendant was indicted. Instead, she recanted her sworn accusations and refused to testify at the defendant’s trial.
The People subpoenaed the complainant to appear at trial. Arguing that the defendant had resumed his relationship with the complainant by communication with her and having her visit him in jail, they requested a hearing, pursuant to People v Mastrangelo (693 F2d 269 [2d Cir 1982], cert denied 467 US 1204 [1984]), to determine whether the defendant’s conduct had induced the complainant not to testify at trial. The complainant appeared, was assigned counsel, and, at the Mastrangelo hearing, invoked her Fifth Amendment right against self-incrimination under the United States Constitution. No other witnesses were presented and the People withdrew their motion. Shortly thereafter, the People offered both transactional and testimonial immunity to the complainant. Despite the granting of full immunity she refused to testify.
*948 After the court’s explanation of the meaning of full immunity and the possible consequences of a continued refusal to testify, the complainant decided to testify. However, she did so reluctantly and her testimony was a recantation or minimization of her Grand Jury testimony.
Given the complainant’s postindictment behavior, that is, recanting or minimizing prior allegations, the People have moved in limine for a ruling allowing them to call an expert witness on domestic violence to testify regarding the "battered woman syndrome”. The People argued that expert testimony would aid the jury in its understanding of the complainant’s recantation. Further, the People emphasized that their expert was not being called to give an opinion as to whether the complainant suffers from BWS or to challenge her credibility or establish any of the charges against the defendant. In fact, they explained that the expert had not met, spoken to, heard or read testimony of or evaluated the complainant. The defense opposed the calling of the expert, arguing, in essence, that expert’s testimony was not appropriate since the complainant was not a battered woman but, instead, a "scorned woman”, who had engaged in false accusations because of her husband’s infidelity, as evidenced by the birth of his child by another woman.
After reviewing the People’s memorandum of law and considering counsel’s argument on both sides of the issue, this court ruled that the expert would be allowed to testify.
This decision sets forth in detail the reasoning for the court’s oral decision.
At the outset, it is noted that a review of New York case law found no written case where a court has ruled on whether expert testimony of the "battered woman syndrome” is admissible to aid the jury to evaluate a complainant’s recantation. Consequently, this issue appears to be one of first impression.
DISCUSSION ADMISSIBILITY OF BATTERED WOMAN’S SYNDROME EXPERT TESTIMONY
The Court of Appeals has long held that "admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court”. (People v Cronin, 60 NY2d 430, 433 [1983], citing Selkowitz v County of Nassau, 45 NY2d 97 [1978].)
Admissibility of BWS expert testimony at trial requires three threshold determinations: (1) whether the evidence presented *949 by the expert witness has the required scientific basis for admission, (2) whether the jurors are not able to evaluate and draw conclusions from the evidence based on their day-to-day experiences, their common observation and their knowledge, and would benefit from the specialized knowledge of an expert witness, and (3) whether the probative worth of the expert’s testimony outweighs the possibility of undue prejudice to the defendant or interferes with the jury’s province to determine credibility. (Generally see, Fisch, New York Evidence § 412 [2d ed 1977].)
I.
An examination of the legal history of the BWS shows that it has been found to have the required scientific basis for admission into evidence in New York.
More than a decade ago in People v Torres (128 Misc 2d 129, 135 [1985]), a parallel court concluded that the battered woman syndrome had "gained a substantial enough scientific acceptance to warrant admissibility.” Since Torres (supra), expert testimony regarding the "battered woman syndrome” has been found to have the scientific basis for admission in this State. (See, Matter of Glen G., 154 Misc 2d 677 [1992]; People v Ciervo, 123 AD2d 393 [2d Dept 1986]; Matter of Victoria C, 165 Misc 2d 702 [1995]; People v Rossakis, 159 Misc 2d 611 [1993].)
The courts in sister jurisdictions and at least one Federal District Court have also found expert testimony regarding the battered woman syndrome to have the scientific basis for admissibility. (See, State v Kelly, 97 NJ 178, 478 A2d 364 [1984]; State v Borrelli, 227 Conn 153, 629 A2d 1105 [1993]; Commonwealth v Stonehouse, 521 Pa 41, 555 A2d 772 [1989]; State v Hill, 287 SC 398, 339 SE2d 121 [1986]; Fielder v State, 756 SW2d 309 [Tex 1988]; State v Steele, 178 W Va 330, 359 SE2d 558 [1987]; State v Gallegos, 104 NM 247, 719 P2d 1268 [1986]; Arcoren v United States, 929 F2d 1235 [8th Cir], cert denied 502 US 913 [1991].)
II.
The next question is whether the battered woman syndrome is a matter of common knowledge. Expert testimony is not admissible if it deals with matters that are within the common knowledge of a jury. (Dougherty v Milliken, 163 NY 527, 533 [1900].)
The inquiry here must focus on whether the average juror possesses the knowledge or information about BWS necessary *950 to evaluate the evidence or form necessary conclusions. (Fisch, New York Evidence § 412 [2d ed 1977].)
The battered woman syndrome is described as "a series of common characteristics found in women who are abused both physically and emotionally by the dominant male figures in their lives over a prolonged length of time”. (Emerson, United States v. Willis: No Room for the Battered Woman Syndrome in the Fifth Circuit% 48 Baylor L Rev 317, 320 [1996].)
As stated in Torres: "Among the characteristics of such abused women are a decrease in self-esteem, an emotional dependence upon the dominant male and a type of psychological 'learned’ helplessness arising out of an inability to predict or control the violence directed against them.” (People v Torres, 128 Misc 2d, supra, at 132.) Moreover, "the syndrome is a psychological condition, which leads a female victim of physical abuse to accept her beatings because she believes that she is responsible for them, and hopes that by accepting one more beating, the pattern will stop.” (Arcoren v United States, 929 F2d, supra, at 1240.) The relationship of the battered woman to the dominant male has been described as consisting of a "three-stage cycle: first, a tension-building stage; second, a violent stage; and third, a contrite loving stage. The cyclical nature of the relationship allows the battered woman to anticipate oncoming violence, and entices her to remain with her abuser after the violent stage is over * * * Generally, the battered woman is reluctant to report the battering, because she and her children are economically dependent upon her abusive husband, and because she fears that the police and the courts will fail to provide her with adequate protection. As a result, a feeling of isolation develops, which further reinforces the sense of helplessness.” (D’Emilio, Battered Woman’s Syndrome and Premenstrual Syndrome: A Comparison Of Their Possible Use As Defenses To Criminal Liability, 59 St John’s L Rev 558, 563-564 [1985].) Lastly, an additional characteristic is that "If charges are filed, the battered woman may change her mind about prosecuting the batterer and withdraw her complaint, refuse to testify as a witness, or recant.” (Schroeder, Using Battered Woman Syndrome Evidence in the Prosecution of a Batterer, 76 Iowa L Rev 553, 560 [1991].)
The actions of a woman suffering from BWS are subject to many misconceptions or myths, including the belief that the woman provokes the beatings or likes the beatings since she neither leaves the batterer nor seeks help. (Id., at 556-557.) The nature of a battered woman’s behavior is such that an *951 often drawn "common sense” conclusion is that the abuse has not in fact happened. (People v Torres, supra.) "Learned helplessness”, the feeling of no escape, the dynamics of victimization and other characteristics common to the BWS are not concepts which are common to the average person’s day-to-day experience.
Consequently, over the years, expert evidence of the "battered woman syndrome” has been introduced at criminal trials by both the prosecution and the defense to help juries understand the behavioral pattern of abused women and how the abuse affects their conduct before, during and after the commission of a crime. (People v Hryckewicz, 221 AD2d 990 [4th Dept 1995]; People v Torres, supra; Arcoren v United States, supra; State v Borrelli, supra.)
This court concludes that since an understanding of the BWS is not within the day-to-day experience of the average juror and expert testimony on the "battered woman syndrome” is relevant to assist the jury to evaluate preincident and postincident or preindictment conduct of the complainant, it is admissible to aid the jury in its evaluation of the complainant’s postindictment behavior.
III.
The last threshold question that must be determined before expert testimony may be introduced at a trial is whether its prejudicial effect outweighs its probative worth.
The Court of Appeals, in People v Bennett (79 NY2d 464, 473 [1992]), has held that evidence may be inadmissible in cases where "the potential value of the evidence is outweighed by the possibility of undue prejudice to the defendant or interference with the province of the jury.” Moreover, in People v Taylor (75 NY2d 277 [1990]), the Court of Appeals held that expert evidence was inadmissible when introduced merely to prove that a crime took place; and, in People v Ciaccio (47 NY2d 431 [1979]), the Court of Appeals found expert opinion inadmissible because it was used to bolster a witness’ credibility. These rules apply, with equal force, to BWS expert testimony. It may not be introduced to bolster or attack credibility, nor to prove that a crime took place.
THE BATTERED WOMAN’S SYNDROME AND RECANTATION
We now turn to the question of BWS expert testimony’s admissibility, with respect to a complaining witness’s recantation.
*952 Although New York case law that focuses on the admissibility of BWS expert testimony, with respect to a complaining witness’s recantation, was not found by this court, several courts, in other jurisdictions, have considered this issue. A review of some of these courts’ decisions reveals that they rely on criteria similar to that found in New York for the admission of expert testimony in general. In addition to finding a scientific basis for admission, these courts have focused on whether the jury may benefit from the experts’ specialized knowledge and whether the probative worth of the evidence outweighs its potential for undue prejudice or interferes with the jury’s province in determining credibility.
For example, in Arcoren (supra), the United States Court of Appeals for the Eighth Circuit affirmed a District Court that allowed expert testimony after the complainant recanted, concluding that: "A jury naturally would be puzzled at the complete about-face [the complainant] made, and would have great difficulty in determining which version of [the complainant’s] testimony it should believe. If there were some explanation for [the complainant’s] changed statements, such explanation would aid the jury in deciding which statements were credible.” (Arcoren v United States, 929 F2d, supra, at 1240.) This Federal appeals court allowed BWS expert testimony when it "merely provided expert information to aid the jury in evaluating the evidence”, which it concluded "did not interfere with or impinge upon the jury’s role in determining the credibility of witnesses.” (Supra, at 1241.)
Similarly, the Supreme Court of Connecticut upheld the introduction of BWS expert testimony in Borrelli (supra), stating that: "Certainly, the jury had the right to consider [the expert’s] testimony in determining whether to believe the victim’s prior statement or her testimony at trial. [The expert] did not testify, however, that the victim was in fact battered and therefore did not comment, directly or indirectly, on her credibility. Rather, this case is similar to State v. Spigarolo, supra, 210 Conn, at 377, 556 A.2d 112, in which we held that a trial court did not abuse its discretion by admitting an expert witness’ testimony on the general behavioral characteristics of child abuse victims. We rejected the defendant’s claim that the testimony usurped the jury’s function of assessing the credibility of witnesses, noting that there is a 'critical distinction between admissible expert testimony on general or typical behavior patterns of * * * victims and inadmissible testimony directly concerning the particular victim’s credibility.’ Id. at *953 379, 556 A.2d 112.” (State v Borrelli, 227 Conn 153, 173, 629 A2d 1105, 1115, supra.)
Further, the court stated that: "Under the circumstances of this case, [the expert’s] expert testimony was properly admitted 'to assist the jury in understanding, not whether [the victim] was a credible witness on the witness stand, but whether her conduct * * * was consistent with the pattern and profile of a battered woman.’ ” (State v Borrelli, 227 Conn 153, 174, 629 A2d 1105, 1115-1116, supra.)
The Court of Appeals of Wisconsin also allowed the introduction of BWS expert testimony when a complainant recanted, concluding that: "The question is whether the expert testimony will 'assist’ the trier of fact. It may be common knowledge that parties to a relationship may say things about the other party which are untrue, especially in the heat of a domestic quarrel, only to tell the truth later. Yet, it is not common knowledge that one reason for a recantation may be the existence of battered woman’s syndrome.” (State v Bednarz, 179 Wis 2d 460, 468, 507 NW2d 168, 172 [1993], review denied 513 NW2d 406 [1994].)
Of course, BWS expert testimony would only be admissible if it is relevant, based on a proper evidentiary foundation. In rejecting the introduction of BWS expert testimony the Supreme Court of Montana articulated this requirement in State v Stringer (271 Mont 367, 897 P2d 1063 [1995]). There, the court stated that: "the party seeking to introduce battered woman syndrome evidence must lay an appropriate foundation substantiating that the conduct and behavior of the witness is consistent with the generally recognized symptoms of the battered woman syndrome, and that the witness has behaved in such a manner that the jury would be aided by expert testimony which provides a possible explanation for the behavior.” (State v Stringer, 271 Mont 367, 378, 897 P2d 1063, 1070, supra.)
After considering the above, this court grants the People’s application to introduce BWS expert testimony for the following reasons.
Initially, it is noted that the defense has not challenged the introduction of BWS expert testimony on the basis that it lacks the requisite scientific basis for admission or that BWS is a matter of common knowledge, for which a jury does not require the specialized knowledge of an expert witness. These threshold criteria have been met. As noted above, BWS expert testimony has the scientific basis for admission as a matter of *954 law, and it is well recognized that it is not a subject of common knowledge for the average juror.
The focus of the defendant’s challenge to the admissibility of BWS expert’s testimony is that it is not relevant in this case. In essence, the defendant contends that the People have not laid a proper foundation for the introduction of this evidence because the complainant has never been determined to be a battered woman by an expert nor is there evidence before the jury that she suffers from this condition. Further, the defendant argues that the complainant’s recantation is self-explanatory and that the jury was given the reason for the recantation by the complainant, when she described her initial accusation as false and based on vengeance for her husband’s infidelity. Consequently, the defendant concludes that BWS expert testimony is not necessary to understand actions based on vengeance, and that the expert’s testimony would only serve to prove that the defendant committed the crimes charged and that the complainant is not credible.
With respect to the lack of foundation argument, this court concludes that it is unsupported by the record. It is widely accepted that, "[e]xpert testimony on the subject of battered woman’s syndrome is not relevant unless there is some evidentiary foundation that a party or witness is a battered woman, and that party or witness has behaved in such a manner that the jury would be aided by expert testimony providing an explanation for the behavior”. (State v Borrelli, 227 Conn 153, 172, n 15, 629 A2d 1105, 1115, supra, citing State v Koss 49 Ohio St 3d 213, 218, 551 NE2d 970, 974 [1990].)
The People have met their burden of laying a proper foundation for the introduction of BWS expert testimony. They presented evidence of characteristics of the three stages in the cycle of violence associated with BWS. With respect to the "tension building” stage, there is evidence, as in Bednarz (supra), of "discipline and physical abuse in the past” which "can also be viewed as evidence of isolation since it tends to show [the defendant] did not kindly approve of [the complainant] being able to come and go as she pleased.” (State v Bednarz, 179 Wis 2d 460, 465-466, 507 NW2d 169, 171, supra.) There was evidence of criticism of her housekeeping by the defendant. Evidence of the complainant’s passivity was provided by the fact that the complainant stayed with the defendant despite his past violence and by the description of an eyewitness to one of the violent episodes, who testified that the complainant failed to shield herself from defendant’s blows by keeping her hands in her lap while being beaten.
*955 Concerning the "explosion” or violent stage, there is evidence of physical violence and injuries suffered by the complainant.
Regarding the "honeymoon” or contrite loving stage, there is evidence of the defendant’s efforts to make amends by having the apartment painted and repaired and buying new furniture to get the complainant to return to him.
Other factors characteristic of BWS behavior, present here, was the evidence that the complainant blamed herself for causing the incidents and that the complainant minimized or denied the severity of the violence.
Based on the above this court concludes that the necessary foundation has been laid.
The defendant’s contention that the recantation is self-explanatory must be rejected. Essentially, the defendant argues that an understanding of the complainant’s behavior may be determined by a "common sense inquiry”. This approach has long been rejected by our courts (see, People v Torres, 128 Misc 2d 129, supra). It is now accepted that "it is not common knowledge that one reason for a recantation may be the existence of battered woman’s syndrome.” (State v Bednarz, 179 Wis 2d 460, 468, 507 NW2d 168, 172, supra.)
Finally, as to the defendant’s argument that the expert would only serve to challenge the complainant’s credibility and to prove that a crime was committed, this court concludes that there is no indication that the People seek to introduce such expert testimony for any of the purposes prohibited by our highest court. The expert testimony is not offered to show that assaults or other crimes occurred or that the complaining witness was lying. Instead, the expert testimony was offered to aid the jury to understand the postindictment behavior of the complaining witness. The People have unequivocally indicated in their moving papers and oral argument that their expert will not comment on credibility, nor offer any evidence as to whether a crime was committed, nor opine as to whether the complaining witness is a battered woman. Moreover, the People represent that the expert had no contact with the complainant, nor had she familiarized herself with the charges against the defendant. Consequently, the probative worth of the BWS expert testimony outweighs any potential for undue prejudice.
CONCLUSION
Being satisfied that expert testimony regarding the "battered woman syndrome” has the required scientific basis for *956 admission, that it is not within the common knowledge of the average juror, that it is relevant, and that its potential value is not outweighed by the possibility of undue prejudice to the defendant or interferes with the jury’s province to determine credibility, this court concludes that such expert testimony is admissible in the instant case.
Consequently, the People’s motion is granted.