OPINION OF THE COURT
John M. Leventhal, J.
Defendant moves to have the People produce specified documents. Defendant claims that the records are vital to the preparation of her defense based upon the “Battered Woman’s Syndrome” (BWS). Defendant has commenced three separate proceedings for the documents. Defendant has issued a subpoena for these documents, requested the material under the Freedom of Information Law (Public Officers Law § 87 [FOIL]), and requested the material under CPL article 240.
In deciding this motion the court has considered defendant’s omnibus motion, the People’s answer to the omnibus motion, the People’s motion to quash the subpoena, defendant’s answer to the People’s motion to quash the subpoena dated June 2, 1998, defendant’s answer to the People’s motion to quash the subpoena dated August 3, 1998, oral argument on August 18, 1998, the autopsy report, a three-page document signed by Nicole Avery and allegedly sworn to by defendant on October 29, 1998 (a date that at the time the court received the document had not yet arrived — the court received the document on *44 September 29, 1998), addendum to answer re: People’s motion to quash the subpoena, and the court file.
BACKGROUND
On or about January 1, 1998 at approximately 11:00 a.m., at 106 Steuben Street in Kings County, the defendant stabbed her boyfriend to death. Defendant was apprehended at the scene of the crime. Defendant gave three oral statements, one written statement, and a videotaped statement to law enforcement agents. All five statements tell essentially the same story.
Shortly before midnight New Year’s Day 1998, defendant attempted to enter her paramour’s apartment with her key. Upon unlocking the door, defendant was able to open the door slightly, but not enough to gain entry. Seeing that the couch blocked the doorway, she believed her boyfriend to be asleep. She pushed the door gently so as not to disturb her paramour. Upon gaining entry into the apartment, defendant observed the victim “having sex” with a person named Diane (a person apparently known to defendant). Defendant had an argument with Diane and ordered her to leave the apartment. Diane left, and an argument ensued between defendant and her boyfriend.
At the conclusion of the argument, the victim and defendant went to sleep in different rooms. During the course of the evening, defendant woke up her boyfriend to talk about the evening’s events, but he did not wish to talk about the matter. In the morning after both parties were awake, defendant continued to argue with her boyfriend. At about 11:00 a.m., during an argument, the victim was close to the defendant’s face. The defendant pushed the victim who, in turn, pushed defendant off her chair. Defendant grabbed a knife and stabbed the victim, killing him.
For this incident, defendant has been indicted on two counts of murder in the second degree.
At oral argument on August 18, 1998, defendant represented that an examination of the defendant had been conducted and defendant was found to suffer from Battered Woman’s Syndrome.[1]
The court’s records show that defendant received an order of protection against the deceased on October 9, 1996, which expired April 8, 1997. The record also shows that defendant is *45 registered with the Family Protection Registry under case No. 96R072716 and order of protection No. 1996-R00465. There is thus a basis to believe that there were prior incidents between defendant and the deceased.
BATTERED WOMAN’S SYNDROME AS A DEFENSE
Domestic violence is a social as well as a legal issue, with responsibility placed upon the courts, as well as society, to deal with it accordingly.[2] “ ‘Battered Women’s Syndrome’ is generally recognized in the psychiatric community to explain common reactions of women in abusive relationships” (People v Truick, NYLJ, June 11, 1998, at 31, cols 1, 2; see also, People v Ciervo, 123 AD2d 393; People v Ellis, 170 Misc 2d 945). In People v Ellis (supra), the court held that to be admissible, testimony regarding BWS must have a scientific basis for admission and must be beyond the common knowledge of the average juror. Today, courts have commonly held that both requirements are met. BWS has been found to have a scientific basis in this State (see, People v Ciervo, 123 AD2d 393, supra; Matter of Victoria C. v Higinio C., 165 Misc 2d 702; People v Rossakis, 159 Misc 2d 611; Matter of Glenn G., 154 Misc 2d 677; People v Torres, 128 Misc 2d 129, 134). “The typical juror hearing the domestic violence case is likely to bring with him or her many misconceptions regarding intrafamilial violence.”[3]
Although discretion is left to the courts, Battered Woman’s Syndrome, as a defense, is generally accepted today to explain the reactions of abused spouses or intimate partners. “Learned helplessness is a term that has been applied to the psychological change that abuse causes in a battered woman. After a woman experiences repeated abusive episodes over which she believes she has no control, her ability to develop escape responses is lost, even when escape from the relationship is feasible” (Note, Using Battered Woman Syndrome Evidence in the Prosecution of a Batterer, 76 Iowa L Rev, op. cit., at 559). While a situation may appear to have an escape and the time difference between the defendant’s action and the alleged abuse may be significant, BWS explains the mindset of an abused spouse whose perceptions and believed options are different *46 from that of the ordinary juror. “The admission of expert testimony regarding rape trauma syndrome, learned helplessness syndrome and battered woman syndrome was proper ‘to explain behavior on the part of the [complainant] that might seem unusual to a lay jury unfamiliar with the patterns of response exhibited’ by a person who has been physically and sexually abused over a period of time” (People v Hryckewicz, 221 AD2d 990, 990-991, quoting People v Bennett, 79 NY2d 464, 471).
At oral argument defense counsel represented that the defense in this case would be justification.
Calling justification a “defense” is a misnomer. Justification does not negate a particular element of the crime nor does it operate to excuse criminal activity (People v Pons, 68 NY2d 264, 267). If the use of force is justified the force is legal and proper (supra; People v McManus, 67 NY2d 541, 545). It is the People’s burden to show beyond a reasonable doubt that the use of force was not justified (People v McManus, supra, at 549; People v Higgins, 188 AD2d 839, 840).
In considering justification, a jury must determine whether defendant reasonably believed that the use of deadly physical force was necessary, and whether defendant’s belief was reasonable by objective standards (People v Goetz, 68 NY2d 96, 115; see also, People v Aska, 91 NY2d 979, 981). Evidence of Battered Woman’s Syndrome is relevant to the issues of whether defendant reasonably believed that deadly physical force was necessary and whether that belief was reasonable under the circumstances.
SUBPOENA
Defendant has issued a subpoena to the District Attorney requesting the following: “Copies of all records, police reports, Criminal Complaints, DD5s, ECAB Sheets, Grand Jury Synopsis Sheets, memo books, follow-up reports, UF-61s, Orders of Protection, Rosario and other discovery material in all cases within the past five (5) years, in which Valerie Seeley was a complaining witness against William Oliver, as defendant [sic].”
The People have moved to quash the subpoena.[4]
A subpoena is a process or mandate of the court and is issued by an attorney as agent of the court and not as a repre *47 sentative of a party to an action (People v Natal, 75 NY2d 379, 384-385; Matter of Spector v Allen, 281 NY 251, 259; see, CPL 610.10 [2]). The purpose of a subpoena is to produce evidence at a proceeding, and it is improper to use a subpoena as a discovery tool (Matter of Terry D., 81 NY2d 1042, 1043-1044; People v Carpenter, 240 AD2d 863, 864; People v Wallace, 239 AD2d 272, 273).
It is clear from the facts of this case, the moving papers, the opposition to the motion to quash the subpoena, and the subpoena itself that defendant is using the subpoena as a discovery tool.
The subpoena directs production of Rosario and “other discovery material”. The documents such as ECAB sheets, criminal complaints, DD5s, etc., are not evidence but merely lead to evidence.
The court finds that defendant is using the subpoena process for the purpose of determining what documents exist, and whether those documents support the potential defense (see, People v Carpenter, supra, 240 AD2d, at 864).
The motion to quash the subpoena is granted.
FREEDOM OF INFORMATION LAW
Defendant makes two FOIL requests. In the omnibus motion, the defendant has a heading called “Request Under Freedom of Information Law” in which she requests “all material in the possession of the District Attorney that relates to Ms. Seeley or is about Ms. Seeley be given to Ms. Seeley. Specifically the police reports in the District Attorneys possession pertaining to the present case and Ms. Selley’s [sic] past arrests, or bad acts”. In defendant’s reply to the People’s motion to quash the above-noted subpoena, defendant again makes a FOIL request which includes the above-quoted portion and all items mentioned in the subpoena.
The Freedom of Information Law was enacted to foster the public’s “inherent right to know” the workings of government (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). The status of a person requesting documents or records under FOIL is irrelevant. The entitlement to the record or document is based upon a petitioner’s status as a member of the public (Matter of Farb *48 man & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 80-81; Matter of John P. v Whalen, 54 NY2d 89, 99). That the FOIL requester is or was a litigant in a matter neither enhances nor restricts such person’s rights under FOIL (supra). Such a person makes the request as a member of the public and not as a litigant (supra). Because of this, a FOIL requester is entitled to receive documents that an ordinary litigant would not ordinarily receive under a particular discovery statute (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274). Conversely, a FOIL requester may be denied access to documents that a litigant may be entitled to receive under a discovery statute. For example, a criminal defendant is entitled to receive copies of autopsy reports (People v Munoz, 11 AD2d 79, 85, affd 9 NY2d 638; Matter of Silver v Sobel, 7 AD2d 728), Grand Jury testimony of trial witnesses (People v Pizarro, 15 NY2d 803, 804; People v Renner, 80 AD2d 705), a witness’ criminal record (CPL 240.45; People v Hernandez, 210 AD2d 535, 536; People v Hilton, 210 AD2d 180), and medical records (CPL 240.20 [1] [c]). A criminal defendant who requests the identical records under FOIL cannot obtain these documents (Matter of Assakaf v Arden, 210 AD2d 325; Matter of Huston v Turkel, 236 AD2d 283, 283-284; Matter of Mullgrav v Santucci, 195 AD2d 786; Matter of Woods v Kings County Dist. Attorney’s Off., 234 AD2d 554, 555; Matter of Bennett v Girgenti, 226 AD2d 792; Matter of Newton v District Attorney of Bronx County, 186 AD2d 57).
Petitioner’s status as a criminal defendant does not enhance her rights to documents that the public cannot obtain (see, Matter of John P. v Whalen, supra, 54 NY2d, at 99).
A party requesting documents under the FOIL must adhere to the procedure articulated in section 89 of the Public Officers Law. The defendant here has failed to follow the mandated procedure.[5] In failing to do so, the defendant has not exhausted her administrative remedies. Her request under *49 FOIL must be denied (see, Matter of Graziano v Coughlin, 221 AD2d 684, 687; Matter of Reubens v Murray, 194 AD2d 492; Matter of Newton v Police Dept., 183 AD2d 621, 624).
In addition, the court notes that some of the documents requested were turned over to counsel as part of the voluntary disclosure form, and as such cannot be obtained via FOIL (Matter of Walsh v Wasser, 225 AD2d 911, 912; Matter of Moore v Santucci, 151 AD2d 677, 678).
Some of the documents, such as criminal complaints, are court documents and are not available under FOIL (see, Matter ofMullgrav v Santucci, 195 AD2d 786, supra; Matter of Gibson v Grady, 192 AD2d 657).
To the degree that defendant requests criminal records, they are also unavailable under FOIL (Matter of Woods v Kings County Dist. Attorney’s Off., 234 AD2d 554, 555, supra; Matter of Bennett v Girgenti, 226 AD2d 792, supra).
It is noted that one nisi prius court has held that FOIL is unávailable to a defendant while the criminal action is still pending (Pittari v Pirro, 179 Misc 2d 241 [Sup Ct, Westchester County 1998]; cf., In re Legal Aid Socy. v New York City Police Dept., NYLJ, Oct. 22, 1998, at 29, col 4).
Defendant’s request under the Freedom of Information Law is denied.
BRADY MATERIAL
Defendants have a due process right to a fair trial (Brady v Maryland, 373 US 83). A due process violation exists when the prosecution suppresses evidence that is favorable and material to the guilt or innocence of the defendant (Brady v Maryland, 373 US, at 87, supra; People v Steadman, 82 NY2d 1, 7).
When a defendant has knowledge of the exculpatory material, or when such material is fully available to the defendant, it is not considered to be suppressed by the People, nor is it deemed to be Brady material (People v Fein, 18 NY2d 162, 170; see, People v Gordon, 237 AD2d 376; People v Williams, 236 AD2d 493; People v Rodriguez, 223 AD2d 605, 606; People v Buxton, 189 AD2d 996, 997; People v Deas, 174 AD2d 751; People v LaRocca, 172 AD2d 628, 629; People v Murray, 140 AD2d 949, 950; People v Banks, 130 AD2d 498, 499; People v Murphy, 109 AD2d 895; People v Jones, 85 AD2d 50).
*50 It is clear that the defendant has knowledge of many of the facts contained in the reports and records filed by the defendant with the prosecution. Thus, the material sought is not Brady material.
While defendant claims that much documentary evidence is unavailable to her because she cannot obtain her property without sufficient funds, no application has ever been made to this court seeking an order releasing or making available to her the documents in the possession of other individuals.
At oral argument on August 18, 1998, the People claimed that defendant was not suffering from BWS. The People’s belief is irrelevant to the issue of whether any material is exculpatory (see, People v Baxley, 84 NY2d 208, 213-214; People v Robinson, 133 AD2d 859, 860).
The People are reminded that “the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police” (Kyles v Whitley, 514 US 419, 437; People v Wright, 86 NY2d 591, 598). In this case, the People “have a duty to learn of any evidence” that supports the “defense” of justification and, in this case, Battered Woman’s Syndrome, whether they believe or disbelieve that defendant suffers from the Syndrome.
This court has no reason to believe that the People will not fulfill their obligation, and defendant has failed to show that any such material exists.
DISCOVERY
At common law, courts had no power to order discovery in criminal cases (People v Colavito, 87 NY2d 423, 426; People ex rel. Lemon v Supreme Ct., 245 NY 24, 28). There is also no Federal or State constitutional right to discovery (Weatherford v Bursey, 429 US 545, 559; Matter of Miller v Schwartz, 72 NY2d 869, 870). The New York Legislature has taken into account values “premised on constitutional rights and fundamental fairness” and adopted CPL article 240 which, by specifying what exactly is discoverable prior to a criminal trial, essentially excludes items not mentioned from discovery (People v Colavito, supra, 87 NY2d, at 427).
Since there is no constitutional right to discovery in criminal cases, courts cannot grant discovery where no statutory basis exists (Matter of Sacket v Bartlett, 241 AD2d 97, 101; Matter of Pirro v LaCava, 230 AD2d 909, 910). Thus, discovery in criminal proceedings is entirely governed by statute (People v Copicotto, 50 NY2d 222, 225; Matter of Hynes v Cirigliano, 180 AD2d 659).
*51 The People contend that the requested material should not be provided because no statutory provision mandating or allowing such disclosure exists (see, CPL 240.20). CPL 240.20 (1) provides in pertinent part that “the prosecutor shall disclose to the defendant and make available for inspection” certain materials. While CPL 240.20 (1) (a) lists “[a]ny written, recorded or oral statement of the defendant * * * made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement”, the People contend that this does not include prior complaints made by the defendant on unrelated matters, but only to statements relating to the incident for which defendant was indicted. This court agrees with the People’s contention that the legislative purpose behind CPL 240.20 (1) (a) was to allow the discovery of defendant’s statements made about the present criminal act.
Our analysis, however, does not end here.
CPL 240.40 (1) (c) reads in pertinent part that the court “may order discovery with respect to any other property, which the people intend to introduce at the trial, upon a showing by the defendant that discovery with respect to such property is material to the preparation of his defense, and that the request is reasonable” (see, People v Colavito, supra, 87 NY2d, at 427; People v Bissonette, 107 Misc 2d 1049, 1051). In order to be entitled to discovery by court order, defendant must show that the People intend to introduce the property at trial (People v Bissonette, supra; People v 230 W. 54th St. Corp., 135 Misc 2d 502). Defendant must also show that the property is material to the preparation of her defense, and that the request is reasonable.
At oral argument on August 18, 1998 the Assistant District Attorney stated that if defendant were to present expert testimony regarding BWS, the People would then introduce expert testimony that defendant was not a “battered woman” and that it was the deceased who was a “battered person”. The People claimed that they have evidence including criminal complaints in which the victim sought court assistance in defense of assaults by the defendant.
Since the claim, in this case is justification, and the People have the burden of proving beyond a reasonable doubt that the force used by defendant was unjustified, it will be necessary for the People to introduce evidence at trial regarding prior complaints made by defendant against the victim, and complaints by the victim against the defendant. The expert called by the People will in all likelihood rely upon many of the documents demanded by defendant.
*52 It is noted that courts have permitted both the defendant and the prosecution to introduce evidence of BWS (see, People v Truick, NYLJ, June 11, 1998, at 31, col 1, supra; People v Ellis, 170 Misc 2d 945, supra).
It is also noted that even if the Assistant District Attorney does not introduce evidence of violence against the defendant by the victim, when defendant testifies as to these violent acts, the People will seek to use defendant’s statement to law enforcement agents as prior inconsistent statements. Although prior inconsistent statements are not received into evidence for their truth, the jury may see any written statements for their impeachment value (People v Blanchard, 177 AD2d 854, 856; see also, People v Alicea, 229 AD2d 80, 88-89). In this respect, the court notes that any records that resulted in a favorable disposition as defined by CPL 160.50 (3) are sealed, and may not be used by the People on either their direct case or on cross-examination as impeachment evidence (People v Hunter, 88 AD2d 321; see also, Matter of Alonzo M. v New York City Dept. of Probation, 72 NY2d 662).
The court finds that defendant has shown that the People intend to introduce at the trial certain evidence regarding defendant’s prior relationship with the victim, including evidence that the victim committed or did not commit violent acts against defendant. The requirement under CPL 240.40 (1) (c) that the discoverable material be property that the People intend to introduce at trial has been met.
CPL 240.40 (1) (c) also requires that the "property” be material to the defense and the request be reasonable.
Except in the addendum to answer re: People’s motion to quash the subpoena, the defendant has failed to specify the time and dates of any incidents between the victim and defendant. Defendant has asked for documents during a five-year period. The court realizes the difficulty that defendant has in giving specifics and in deciding this motion has taken that into account (see, People v Mendoza, 82 NY2d 415, 429). As previously stated this court is aware of the issuance of an order of protection No. 1996-R00465 issued in Kings County by the Criminal Court on October 9, 1996 enjoining the victim from certain activities against the defendant. Also, important to the court’s decision is the fact that the People may obtain information regarding the victim’s criminal history through the use of its computers, and have access to police records in the precinct in which the defendant and victim resided.
The court directs that the People turn over to this court for an in camera inspection all records of which they are aware, or *53 which a reasonable search would reveal (see, People v Coleates, 86 Misc 2d 614, 616), other than those attached to defendant’s addendum to answer re: the People’s motion to quash the subpoena. Should there be any sealed records in the possession of the prosecution, they shall be turned over to this court without examination by the People. Should the People become aware of sealed records that are not in their possession, they shall submit to this court a list of such records and the information they have regarding the record.
Defendant is directed to supply to the People, as best as possible, the approximate times and places of any incidents that were reported to any law enforcement agency. The names and location of such law enforcement agency shall also be given to the prosecution.
After an in camera inspection, the court will determine what documents and/or information shall be disclosed to any party.
The People need not turn over documents already in defendant’s possession as evidenced by defendant’s addendum dated October 1, 1998.

. Some courts have called the syndrome “Battered Wife’s Syndrome”, “Battered Women’s Syndrome” or “Battered Woman Syndrome”. In this decision these terms are used interchangeably.

. See, Note, Using Battered Woman Syndrome Evidence in the Prosecution of a Batterer, 76 Iowa L Rev 553, 555 (Mar. 1991).

. Linsky, Use of Domestic Violence History Evidence in the Criminal Prosecution: A Common Sense Approach, 16 Pace L Rev 73, 81 (1995); see, People v Torres, 128 Misc 2d, at 134, supra; see also, People v Taylor, 75 NY2d 277, 292.

. The People claim that they did not receive the one day’s notice required by CPLR 2307. The failure to give one day’s notice is a defect in the subpoena (People v Bolivar, 121 Misc 2d 229, 230-231; see also, Matter of Bott, 125 *47 Misc 2d 1029, 1030). Nonetheless, since both parties have addressed the merits of the motion to quash, and have argued the merits, the court feels that the motion to quash should be decided upon the merits, rather than require defendant to reissue the subpoena on one day’s notice.

. Under section 89 (3) of the Public Officers Law, a party seeking the production of documents must first make a written request to the agency holding such documents that reasonably describes the items sought. Within five days the agency must produce the material or deny the request. Under section 89 (4) (a), if the request is denied, the defendant has 30 days to appeal in writing to the governing body of the agency and forward a copy of the appeal to the Committee on Open Government for determination. Within 10 days, the agency must provide access to the documents or a written denial explaining the reasons for such denial. Under section 89 (4) (b), the defendant upon a denial of such request may bring a review proceeding under subdivision (2) of section 87 of the Public Officers Law and the agency shall *49 have the burden of proving that the requested records fall within subdivision (2).