891 F.2d 296
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven JACKSON, Defendant-Appellant.
 No. 86-5100.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 11, 1989.
Decided Dec. 6, 1989.
 
 Before ALARCON, BRUNETTI, and DAVID R. THOMPSON, Circuit Judges.
 
 I.
 
 1
 MEMORANDUM*
 
 FACTUAL BACKGROUND
 
 2
 Steve Jackson appeals his conviction by a jury of conspiracy to commit murder (18 U.S.C. § 1117), murder (18 U.S.C. § 1111), and obstruction of justice (18 U.S.C. § 1503). We affirm.
 
 
 3
 Jackson was indicted along with Marvin Bonga and Elbert Shabi for conspiring to murder, and murdering Alfred "Peanut" Bateman, Jr. while inmates at Lompoc Federal Penitentiary. Jackson was also charged with obstruction of justice for allegedly soliciting perjurious testimony from a fellow inmate. Shabi became a government witness in exchange for a guilty plea to conspiracy before the proceedings commenced.
 
 
 4
 Bateman and Bonga had a continuing homosexual relationship throughout 1982. In December, 1982, Bateman informed prison authorities that Bonga was planning an escape. Bateman, fearing for his life, placed himself in segregation, and was transferred to another prison. He was returned to Lompoc's general prison population on September 17, 1984. Bonga murdered Bateman on November 2, 1984.
 
 
 5
 Dennis Kisner, serving a 35-year term for bank robbery, conspiracy and assault upon a federal agent (and awaiting sentence on a second bank robbery), testified for the government. Kisner said he overheard Jackson agreeing to back up Bonga in Bateman's murder. At a later meeting, Jackson again discussed the murder with Bonga and Leonard Davison, an unindicted co-conspirator. Davison told Jackson that, as an American Indian, he (Jackson) had to help Bonga (also an Indian) in the murder scheme. Jackson replied, "Yes, I'll do it." The government introduced a note that Kisner said he wrote to prison authorities in October telling them that Bateman would be a dead man by sundown.
 
 
 6
 On November 2, 1984, Jackson, Bonga, and Shabi entered J-unit where Bonga had his cell. Bonga sent for Bateman and told Shabi that when Bateman arrived, he (Bonga) would stun him with a hammer and stab him. Jackson and Shabi agreed to help Bonga with the body afterwards and then left to wait for Bateman. Bateman showed up in Bonga's cell, but left to get a hypodermic kit for heroin. While Bateman was gone, Shabi helped Bonga curtain off the cell. About 20 minutes later, a cry was heard from Bonga's cell, "Why are you doing this to me?" Shabi pulled the curtain aside to see Bonga and Bateman struggling. Shabi testified that Jackson hit Bateman on the head three times. Shabi testified that the blows were from the rear, while a defense forensic expert testified they were from the front. There was further testimony by a cooperating inmate that Shabi had told him he was outside the cell on the tier when the hammer blows occurred.
 
 
 7
 Bonga attempted to stab Bateman but hit Jackson instead. Jackson then left the scene and Shabi followed him. They were found in another cell in J-unit; he and Shabi were ordered to segregation. Jackson's stab wound was treated later.
 
 
 8
 Meanwhile, after Jackson and Shabi left Bonga and Bateman, Officer Eugene Leader heard moans coming from Bonga's cell. The officer sounded an alarm and went to the cell. Tearing down the blanket curtain, he saw Bonga stab Bateman while saying, "You fuckin' snitch. This is what you get." Other officers arrived and subdued Bonga.
 
 
 9
 Jackson spent time in solitary confinement at Lompoc and allegedly urged another inmate, Frank "Poncho" Torres, to give perjurious testimony on his behalf. Jackson sent a note (to Torres) stating: "[i]f we can get our stories down we can beat this. As for Shabi he's a dead man running on borrowed time." In a second note, Jackson asked Torres to testify about facts which were beyond his knowledge or false.
 
 
 10
 Prior to trial, the district court heard discovery motions and motions alleging government misconduct. The court denied a motion to sever the co-defendants and the charges. After a three week trial, a jury convicted both Bonga and Jackson. Jackson's motion for a new trial was denied. Jackson was sentenced to life imprisonment on the conspiracy and murder counts and five years for obstruction of justice to run concurrently.
 
 II.
 DISCUSSION
 A. Timely Discovery
 
 11
 Appellant claims that the government did not comply with the district court's discovery rulings in a timely fashion, thereby violating his due process rights and denying him a fair trial. Appellant alleges that the government delay prevented him from meaningful investigation and effective use of potentially exculpatory evidence.
 
 
 12
 Appellant alleges that in September, 1985, the government withheld "Rule 16" materials which included prison files of the victim and defendants, scientific reports on clothing and other items concerning the murder. The district court eventually made this information available to defendant.
 
 
 13
 Appellant contends that the government concealed an FBI interview with an inmate containing exculpatory material that the government filed in camera with the court. The trial court eventually allowed defendant access to the information but the identity of the witness was protected.
 
 
 14
 Appellant tried to interview witnesses at Lompoc. Initially, prison authorities refused to allow him to have a third-party present during the interviews. However, appellant's counsel eventually got his interview with a third-party present.
 
 
 15
 Appellant complains that the government withheld the introduction of evidence of an alleged conspiracy between appellant and Shabi to kill "Gopher" Cantrell. The government introduced this information at trial to show motive--that Bonga agreed to help Jackson kill Cantrell if Jackson would agree to help Bonga kill Bateman. During trial, appellant learned notes existed of conversations a prison staff member had with Bonga.
 
 
 16
 Appellant also learned, after Shabi had testified, that Leonard Reinke's statements to the grand jury and during an FBI interview contradicted some of Shabi's testimony. According to the government, the Brady nature of the evidence was not clear until Shabi testified. The trial court offered to allow Jackson to recall Shabi after the new impeachment information came to light but Jackson declined. Furthermore, Shabi's original FBI interview contained this information. It was provided to appellant and Shabi was extensively cross-examined on it.
 
 
 17
 Appellant claims that the government's delay in providing Donald Richardson's grand jury testimony was prejudicial. The testimony stated that Davison, the unindicted co-conspirator, had told Richardson he did not know who killed Bateman. However, the defense received this information on March 12, 1986, and called both Richardson and Davison as witnesses.
 
 
 18
 Appellant also complains that the government withheld information regarding witness Kisner. The defense inquired on February 25, 1986, and although delayed, the information was given to appellant and used to impeach the witness.[1]
 
 
 19
 These delays were not a denial of discovery. The district court made the disputed information or evidence available to defendant or his counsel. Appellant's claim of prejudice asserts that the delay in receiving the information made effective investigation and evaluation impossible. Appellant does not give specific examples of what it was he would have investigated, thus failing to specifically show how he would be prejudiced. The defense could have used the information or asked for a continuance but failed to do so. Thus, there can be no due process violation. See Reiger v. Christensen, 789 F.2d 1425, 1432 (9th Cir.1986).
 
 
 20
 B. Grand Jury Records.
 
 
 21
 Appellant contends that the district court erred when it denied discovery and access to grand jury minutes during a January 30, 1986 hearing. Appellant wanted to inspect the grand jury records for possible prosecutorial misconduct. The district court found that "[t]here hasn't been any particularized showing why there should be an exception to Rule 6 as I view it." Appellant states that the purpose of the request was to determine whether evidence favorable to the appellant had been kept from the grand jury. Mere assertions of impropriety by counsel, without supporting facts, are insufficient to require grand jury disclosure. See, e.g., United States v. DeTar, 832 F.2d 1110, 1113 (9th Cir.1987).
 
 
 22
 C. Failure to Identify Potential Witnesses.
 
 
 23
 Appellant learned that four inmates out of a possible 120 inmates in Bateman's cell block were possible witnesses to the murder. The government refused to disclose the names of these witnesses citing security and safety of the inmates. Eventually, the trial court reached a compromise between the parties and the government narrowed the possible witnesses to 30 persons.
 
 
 24
 The trial court's compromise will not be disturbed unless there was an abuse of discretion. Appellant can point to no abuse of discretion here. See United States v. Domina, 784 F.2d 1361, 1372 (9th Cir.1986).
 
 D. Intimidation of Witnesses
 
 25
 Appellant moved to dismiss the indictment, arguing that government intimidation of defense witnesses violated his due process rights. Appellant contends that the method and type of witness questioning was intimidating, causing prejudice to his defense. Even assuming the government intended to intimidate the witnesses, the appellant must still show prejudice. United States v. Owen, 580 F.2d 365, 367 (9th Cir.1978) ("we adopt [the better view] ... that there be some prejudice to the accused by virtue of the alleged acts of misconduct."). Appellant has failed to show how these so called intimidation tactics affected the outcome of the trial. There is no prejudice and therefore no due process violation.
 
 E. Prior Bad Act Evidence
 
 26
 Appellant claims the district court abused its discretion when it denied his motion to exclude prior act evidence under Fed.R.Evid. 403 and 404(b). Under Fed.R.Evid. 404(b), evidence of prior bad acts may be admitted to prove, among other things, "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." United States v. Rubio, 727 F.2d 786, 797 (9th Cir.1983). The district court admitted evidence of Bonga's using illegal drugs to lure Bateman to his cell, establishing a part of the murder plan. The court also admitted evidence of threats made against the witnesses, which is directly relevant to the charge of obstruction of justice. Evidence of the Cantrell conspiracy was admitted to show appellant's motive for entering the conspiracy with Bonga. All the prior acts were properly admitted on non-character theories of relevance. The district court did not abuse its discretion.
 
 
 27
 Appellant also argues that the admission of this evidence violated Fed.R.Evid. 403. A trial court's decision regarding the admission of evidence under rule 403 will be reversed only for an abuse of discretion. Id. at 798. We find no such abuse here because the probative value of the prior acts is significant and its prejudicial effect minimal in light of the other proof of appellant's guilt offered at trial.
 
 F. Failure to Sever Co-Defendants
 
 28
 Appellant alleges that by denying his motion to sever his trial from Bonga's, the state denied him a constitutionally fair trial. Ordinarily, "defendants jointly charged are to be jointly tried." United States v. Van Cauwenberghe, 827 F.2d 424, 431 (9th Cir.1987), cert. denied, 108 S.Ct. 773 (1988) (citing United States v. Ramirez, 710 F.2d 535, 545 (9th Cir.1983)). Whether severance should be granted is within the sound discretion of the trial court. Van Cauwenberghe, 827 F.2d at 431.
 
 
 29
 Jackson must show "clear," "manifest," or "undue" prejudice from the joint trial and that the prejudice was of "such magnitude that he was denied a fair trial." Van Cauwenberghe, 827 F.2d at 431 (citing United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856 (1980)).
 
 
 30
 Appellant argues that the joint trial prejudiced him because his trial was tainted by Bonga's overwhelming guilt and that his defense directly conflicted with the defense presented by Bonga. This is not the case of one defendant claiming that the other defendant committed the act to the exclusion of the first. "Only where the acceptance of one party's defense will preclude the acquittal of the other party does the existence of antagonistic defenses mandate severance." United States v. Gonzales, 749 F.2d 1329, 1334 (9th Cir.1984) (quoting United States v. Ramirez, 710 F.2d 535, 546 (9th Cir.1983)). The defenses in this case were not so mutually exclusive as to mandate severance. The district court did not abuse its discretion.
 
 G. Failure to Sever Crimes
 
 31
 A district court's decision to grant or deny a motion to sever pursuant to Fed.R.Crim.P. 12(b)(5) (request for severance of charges) is reviewed for an abuse of discretion. United States v. Burgess, 791 F.2d 676, 678 (9th Cir.1986). Severance of criminal charges is required only if the prejudice resulting from the joinder outweighs the dominant concern with judicial economy. Id. Appellant claims that the murder charges should have been separated from the obstruction of justice charge. The two charges are interrelated and trying them separately would require duplicating much of the evidence in each trial. Because separate trials on these charges would require introduction of much of the same evidence, the prejudice involved with joinder was not great enough to require severance.
 
 
 32
 H. Failure to Instruct on Lesser Included Offense
 
 
 33
 Failure to give instructions regarding the defendant's theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable. United States v. Escobar de Bright, 742 F.2d 1196, 1201 (9th Cir.1984). A district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Echeverry, 759 F.2d 1451, 1455 (9th Cir.1985).
 
 
 34
 Appellant had requested the following jury instruction:
 
 
 35
 An agreement to hide the body of a murder victim in order to assist a principal to the murder in avoiding detection, arrest or trial, does not violate the crime of conspiracy to murder as charged in Count 1 of the first superseding indictment and does not make one who enters such an agreement as an aider and abettor in a murder such as charged in Count 2.
 
 
 36
 Appellant sought this instruction as an alternative for the jury if they did not believe appellant had entered into the conspiracy with Bonga. Appellant contends that Shabi's testimony that appellant had tried to persuade Bonga not to kill Bateman and had said he would not assist Bonga with the murder is enough evidence upon which to base the instruction. However, appellant agreed to hide the body before the substantive crime was committed. An "accessory after the fact" instruction would be applicable only if, after the crime had been committed, appellant had agreed to help Bonga deal with the body. The district court did not abuse its discretion by omitting this jury instruction.
 
 I. Sufficiency of the Evidence
 
 37
 Appellant contends the district court erred when it denied his new trial motion based upon insufficiency of the evidence. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); United States v. Penagos, 823 F.2d 346, 347 (9th Cir.1987); United States v. Marabelles, 724 F.2d 1374, 1377 (9th Cir.1984). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Talbert, 710 F.2d 528, 530 (9th Cir.1983). Mere suspicion or speculation is insufficient. United States v. Lewis, 787 F.2d 1318, 1323 (9th Cir.1986).
 
 
 38
 Appellant contends that the evidence presented shows he agreed not to participate in the murder. However, there was also contrary evidence presented: Kisner's testimony regarding the agreement before the murder, Shabi's testimony as to the blows appellant gave Bateman with the hammer, appellant's stab wound and appellant's presence in the J-unit. Looking at the evidence in the light most favorable to the prosecution, the jury could have convicted appellant of the crimes charges beyond a reasonable doubt. Jackson, 443 U.S. at 319. There was sufficient evidence with which to convict appellant.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The Jencks Act (18 U.S.C. § 3500) requires only that this information be available at the end of the witness's testimony