**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**ADLAH A. DONASTORG, Defendant**

Case No. ST-10-CR-F109

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 4, 2010

23

24

25

CLAUDE E. WALKER, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Plaintiff.*

GORDON C. RHEA, ESQ., Richardson Patrick Westbrook & Brickman, LLC, Mt. Pleasant, SC, *Attorney for Defendant.*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(August 4, 2010)

Presently before the Court in the above-captioned matter[1] are two motions: 1) "Defendant Adlah Donastorg's Motion to Dismiss Criminal Information Based Upon Malicious Prosecution and Egregious Prosecutorial Misconduct in Violation of his Due Process Rights" ("Defendant's Motion to Dismiss"); and 2) "The Government's Motion for Expert Testimony Pursuant to FRE 702" ("People's Rule 702 Motion").[2] For the reasons set forth herein, the Defendant's Motion to Dismiss will be denied, and the People's Rule 702 Motion will be granted, subject to the conditions contained in Part II.b.3.C of this opinion.

## I. Factual and Procedural Background.

On March 24, 2010, the People of the Virgin Islands (the "People") charged Adlah "Foncie" Donastorg, a sitting senator of the 28th Legislature of the Virgin Islands, ("Senator Donastorg" or "Defendant") in a multiple count criminal information ("Information") dated March 23, 2010. The charging document alleges: 1) one count of Assault in the Third Degree/Domestic Violence, in violation of Title 14 of the Virgin Islands Code § 297(2) and Title 16 of the Virgin Islands Code § 91(b)(1)-(11); 2) one count of Using a Dangerous or Deadly Weapon, in violation of Title 14 Virgin Islands Code § 2251(a)(2)(A); 3) two counts of Aggravated Assault and Battery/Domestic Violence, in violation of Title 14 of the Virgin Islands Code § 298(5) and Title 16 of the Virgin Islands Code

---

[1] The Superior Court has jurisdiction over this criminal action pursuant to Act No. 5890, § 1, 1993 V.I. SESS. LAWS p. 214.

[2] Neither party requested oral argument on the pending motions. In addition, at the June 7, 2010 hearing held in this case, counsel for both parties and the Court identified several scheduling conflicts during the months of July and August, 2010, which ultimately resulted in this case being scheduled for jury selection and trial on September 20, 2010. Thus, it was not possible to schedule an interim hearing on these motions. Therefore, the Court exercises its discretion to decide these matters on the written submissions. *See*, SUPER. CT. R. 36(a).

§ 91(b)(1), (2); and 4) one count of Brandishing, Exhibiting or Using a Deadly Weapon/Domestic Violence, in violation of Title 14 of the Virgin Islands Code § 621(1) and Title 16 of the Virgin Islands Code § 91(b)(1). At his arraignment on March 25, 2010, Defendant pleaded not guilty to all five charges and requested a speedy trial by jury.

The charges grow out of an alleged January 28, 2010 incident between Senator Donastorg and "Ms. K.E." said to have occurred in St. Thomas, Virgin Islands. On January 29, 2010, Ms. K.E. gave a statement to Detective Sergeant Deborah Jack ("Detective Jack") of the Virgin Islands Police Department ("VIPD") on the island of St. Croix ("January Statement"). This statement, along with other VIPD investigation, served as the foundation for a March 22, 2010 Affidavit of Detective Jack and the March 23, 2010 Information against Mr. Donastorg. However, after being interviewed by Detective Jack, but prior to the filing of the Information, Ms. K.E. issued a separate public statement dated March 8, 2010, with the assistance of Judith L. Bourne, Esquire, which addressed the circumstances surrounding the same alleged incident of January 28, 2010 ("March Statement"). In many respects, the March 8, 2010 statement is different from her January 29, 2010 statement, and these two statements of Ms. K.E. are, in large part, the impetus for the pending pretrial motions presently before the Court. Defendant argues, among other issues, that the People should not be allowed to proceed with this prosecution on the basis of Ms. K.E.'s January Statement because she has made clear to the People that her March Statement more accurately depicts the correct circumstances of the incident.

Senator Donastorg also contends that the People took a number of inappropriate actions between January 28, 2010, the date of the alleged incident, and March 24, 2010, the filing of the Information. He claims that the manner in which this investigation was initiated and performed violated his due process rights. In sum, he argues: 1) that certain persons who are supporters of the sitting Governor encouraged or coerced Ms. K.E. to report the January 28, 2010 incident to the Virgin Islands Police Department ("VIPD"); 2) that Ms. K.E.'s current standpoint is that the statement prepared by Detective Jack incorrectly set forth the events of January 28, 2010, and Detective Jack did not correct the January Statement after Ms. K.E. advised her of these concerns; 3) the officials of VIPD and Governor de Jongh's supporters pressured Ms. K.E. or took what she viewed as improper actions during the investigatory process; 4)

28

the People improperly attempted to have Ms. K.E.'s attorney disqualified as counsel[3]; and 5) the People intimidated another witness, C.M., into giving a statement.[4] In support of these allegations, Defendant appends to his motion several statements of the pertinent individuals. By this memorandum opinion, the Court addresses both motions.

## II. Legal Discussion.

### a. Defendant's Motion to Dismiss.

### 1. The Superior Court has the implicit authority to dismiss a criminal case for improper governmental conduct

Neither party cites to, nor did this Court identify, any Virgin Islands precedent which clearly affirms the authority of the Superior Court to dismiss an information on a defendant's pretrial motion based upon alleged governmental misconduct. However, a review of the jurisdiction conferred on this Court by the Virgin Islands Legislature, pursuant to the authority of the Revised Organic Act of the Virgin Islands of 1954, plainly leads to the conclusion that this Court is vested with such authority.

■ While not every provision of the United States Constitution has been extended to the unincorporated territory of the United States Virgin Islands, *see, Gov't of the Virgin Islands v. Boynes*, 45 V.I. 195, 198-199 (Terr. Ct. 2003), a person's basic right to due process is fully applicable in this jurisdiction. In particular, "No person shall be held to answer for a criminal offense without due process of law. . . ." *Revised Organic Act of the Virgin Islands 1954, as amended*, § 3, 48 U.S.C. § 1561, reprinted in *V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution* at 861 (1995) (preceding V.I. CODE ANN. tit. 1) ("*Revised Organic Act*"). Because the right to due process is so fundamental to the American system of jurisprudence, it has long been recognized that courts have the implicit supervisory authority to dismiss a criminal case where

---

[3] At the Pretrial Conference held on June 7, 2010, the Court denied "The Government's Motion to Disqualify Judith Bourne, Esquire as the Attorney for Ms. K.E." and "The Government's Motion to Strike the Opposition to Motion to Disqualify Filed by Attorney Judith Bourne". The Court reduced its decision to writing on June 16, 2010. Therefore, this claim will not be addressed in this opinion.

[4] Although Defendant avers that a statement of C.M. was filed with the Court under seal in support of his motion, no such document has been located in the records of the Court. Therefore, the Court will not consider this portion of Defendant's argument in deciding this motion.

the governmental conduct in investigating and prosecuting the action violate the due process rights of the defendant. *E.g., McNabb v. United States*, 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), *superseded by statute*, Pub. L. No. 90-351, 82 Stat. 210. Therefore, ". . . a conviction in federal courts, the foundation of which is evidence obtained in disregard of liberties deemed fundamental by the Constitution, cannot stand." *Id.* at 339 (citations omitted). State judicial bodies also possess this inherent supervisory authority. *E.g., State v. Hall*, 991 So.2d 775 (Ala. Crim. App. 2007); *People v. Morgan*, 169 Ill. App. 3d 368, 523 N.E.2d 560 (1988).

▌ In this Territory, ". . . the judicial power of the Virgin Islands shall be vested in . . . such appellate and lower local courts as may have been or may hereafter be established by local law. . .", *Revised Organic Act* § 21 (a), 48 U.S.C. § 1611(a). In view of the well-settled precedent that trial courts in the American judicial system necessarily retain the ability to ensure that the rights of a defendant in a criminal case are not compromised, and the language of the *Revised Organic Act*, this Court concludes that it possesses this same inherent supervisory authority over criminal cases pending before it as other American courts. *See, Gov't of the Virgin Islands v. Castillo*, 50 V.I. 565, 573-574 (D.V.I. App. Div. 2008) (implying, but not explicitly deciding, that the Superior Court has inherent supervisory authority to dismiss a criminal action). Having established its authority to entertain Defendant's motion, the Court now turns to the merits of his arguments.

**2. The appropriate standard for dismissal of criminal charges on the basis of alleged governmental misconduct.**

Senator Donastorg moves to dismiss this case because he believes his due process rights, which are protected under the United States Constitution and the Revised Organic Act, have been violated. Specifically, he argues that the People are attempting to use a false statement which was obtained by coercive tactics to obtain his conviction.[5] As a result, Defendant argues, dismissal of this case is the appropriate remedy. The People counter that in criminal cases such as this, "the jury has the sole responsibility to weigh the credibility of the witnesses and assess the evidence."[6] Furthermore, the People explain that

---

[5] Memorandum in Support of Defendant's Motion to Dismiss at pp. 1-2.

[6] Plaintiff's Opposition to Defendant's Motion to Dismiss at p. 1.

they do not believe that Ms. K.E.'s January 29, 2010 statement is false, despite its inconsistencies with the subsequent statement that she publicly issued on March 8, 2010 claiming that Defendant did not commit a crime. The People's position is that the jury should decide as the trier-of-fact how to interpret the two statements.[7]

■ ■ Notwithstanding the People's argument to the contrary, the question of whether criminal charges are susceptible to dismissal due to alleged governmental misconduct is clearly one for the court, not the jury, to decide. *United States v. Pitt*, 193 F.3d 751, 760 (3rd Cir. 1999); *United States v. Regan*, 103 F.3d 1072, 1082 (2nd Cir. 1997). The Court emphasizes that the determination of whether a person's statement is truthful or false, in whole or in part, is reserved for a trier-of-fact at trial. But, presently, that is not the issue before the Court. What the Court is called upon to determine at this time, as discussed below in more detail, is whether the alleged government misconduct caused Ms. K.E. to involuntarily give the January Statement upon which this prosecution is premised.

■ It is well-established that "The Government's conduct can be regarded as so offensive that it requires the dismissal of an indictment only if it is 'most intolerable.' " *United States v. Hoffecker*, 530 F.3d 137, 154 (3rd Cir. 2008) (citing *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir. 1982)), *cert. denied*, 555 U.S. 1049, 129 S. Ct. 652, 172 L. Ed. 2d 615 (2008). *Accord, United States v. Sandlin*, 589 F.3d 749, 758-759 (5th Cir. 2009) (criminal charges should not be dismissed unless the governmental conduct ". . . is so outrageous that it violates the principle of fundamental fairness under the due process clause. . ."), *cert. denied*, 130 S. Ct. 2078, 176 L. Ed. 2d 416 (2010); *United States v. Al Kassar*, 582 F. Supp. 2d 488, 491-492 (S.D.N.Y. 2008) (". . . only Government conduct that shocks the conscience can violate due process.") (citations omitted). Therefore, when considering a criminal defendant's motion to dismiss on the grounds of outrageous governmental conduct, charges usually will not be dismissed under a trial court's supervisory power unless the government has acted deceitfully or taken part in the crime charged. *United States v. Hoffecker*, 530 F.3d at 154 (citations omitted).

---

[7] Senator Donastorg requested a trial by jury at his March 25, 2010 arraignment, consistent with Section 26 of the Revised Organic Act of the Virgin Islands of 1954 and V.I. CODE ANN. tit. 5, § 3601.

■ Other courts have recognized that a due process violation warranting dismissal may arise where governmental agents have intimidated witnesses. Those cases address the scenario wherein the governmental actors have interfered ". . . with a defense witness' choice to testify [which] may violate the due process rights of the defendant." *United States v. Benton*, No. 93-5073, 1994 WL 398451 *1 (5th Cir. July 20, 1994) (citations omitted). As part of this analysis, the movant must be able to demonstrate that he or she was prejudiced by the alleged governmental misconduct. *Id. See also, United States v. Jackson*, No. 86-5100, 1989 WL 150117 *3 (9th Cir. Dec. 6, 1989). The Court will apply these principles when considering the merits of Defendant's Motion to Dismiss.

### 3. Defendant does not meet the threshold warranting dismissal of the Information.

■ Defendant asserts that the statement Ms. K.E. gave to Detective Jack on January 29, 2010 was coerced because of the "heavy-handed interrogation tactics" used by the People, and the People's attempt to use that statement at trial violates his due process rights. As noted by a case cited by Senator Donastorg, the violation of a defendant's due process rights is called into question ". . . if the subject witness was coerced into making false statements and those statements were admitted against defendants at trial." *United States v. Gonzales*, 164 F.3d 1285, 1289 (10th Cir. 1999). A statement is coerced, or involuntary, if the government's conduct domineered over the witness' will and her "capacity for self-determination was critically impaired." *Id.* In determining whether a statement was freely and voluntarily given, courts consider the totality of the circumstances. *Arizona v. Fulminante*, 499 U.S. 279, 285-86, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). The relevant circumstances surrounding a witness' will embrace "both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The United States Supreme Court has noted that its cases make it clear that a finding of coercion is sustainable where there is actual violence or a credible threat of violence by a government agent. *Fulminante*, 499 U.S. at 287 (affirming Arizona Supreme Court's holding that defendant's confession was coerced because it was the fear of physical violence that motivated the defendant to confess).

32

■ The Court determines that Ms. K.E.'s January 29, 2010 statement was voluntary, and not obtained through coercive means based on a review of the documents and arguments submitted by both parties. In this instance, Senator Donastorg has not asserted that Ms. K.E.'s January 29, 2010 statement was obtained by VIPD violence or threats, and he has not pointed to any specific forms of physical or mental duress that were alleged to have been inflicted by government agents and endured by the witness before giving the January Statement. Indeed, a review of Ms. K.E.'s March Statement, which Defendant claims is accurate, notes that on January 29, 2010, she initiated the process when she approached a person she knew, Lavelle Campbell, who consulted with person he knew, Leslie Comissiong, before suggesting she go to the VIPD to report the alleged incident. There is nothing in the documents submitted which demonstrate that Ms. K.E. was forced by either person to go to the VIPD, or that she was so impressionable that she was overwhelmed by either the governmental or non-governmental persons named in her statements.

At the VIPD station in St. Thomas, Ms. K.E. indicates that she met the Police Commissioner, Novelle Francis, who ". . . mainly listened and asked me if I felt safe."[8] Thereafter, she was escorted to St. Croix where she met Detective Jack, who took her to a hotel and then to VIPD offices for an interview. While Ms. K.E. claims in the March 8, 2010 Statement that she was promised an opportunity to correct the January 29, 2010 statement, but did not actually receive that chance, it appears that the promise, if it can so be termed, occurred after she signed the document.[9] Moreover, she also acknowledges in her March 8, 2010 Statement that she did not sign the January Statement the night she arrived in St. Croix, but instead wanted to go over it again "because it was not accurate" and Detective Jack accommodated this request.[10] Thus, Defendant's own submissions do not reveal that Ms. K.E.'s free choice over her own actions was critically impaired due to the People's inability to make good on any promise or the threat or use of violence.

---

[8] March Statement at p. 2.

[9] The March Statement at p. 2 provides in part, "I noticed that the statement had gone from a few pages to something much longer. She told me to just sign it because I had to catch a plane. I looked it over quickly and signed it but told her there were things in it that were wrong. She said we would go over it again and fix it when she came over to St. Thomas, but that never happened."

[10] March Statement at p. 2.

Although Senator Donastorg urgently protests that investigators used "heavy-handed interrogation tactics" to coerce Ms. K.E. into signing a false statement, violating his due process rights, he simply has not provided any specific examples of such interrogation tactics being used to obtain her January Statement in the documents submitted. To the extent he is relying on the governmental actions which are set forth in Ms. K.E.'s March 8, 2010 statement, most of these instances of conduct, even if they can be considered to be improper, occurred after she executed the January 29, 2010 statement and could not have affected the voluntariness thereof.

■ As to these other bases of misconduct alleged by Senator Donastorg, it is clear that there was no participation of, or inducement by, the Government of the Virgin Islands in any crime with which he is charged. Absent such allegations and evidence, dismissal of the Information would be inappropriate. *See, e.g., United States v. De Rewal,* 10 F.3d 100, 105-106 (3rd Cir. 1993). Finally, Defendant has not alleged or provided evidence that any witness he intends to rely on has been intimidated into not testifying at trial. This is the type of prejudice which must be shown in order to substantiate a claim of governmental misconduct based on witness intimidation. *United States v. Jackson,* 1989 WL 150117 at *3. The Court finds that the facts asserted by Defendant do not reflect the actions of someone who signed a statement due to domineering police conduct against her free will, and do not present the type of governmental misconduct which justifies the early termination of these proceedings. Therefore, Senator Donastorg's motion to dismiss will be denied.

### b. The People's Rule 702 Motion.

Filed on June 8, 2010, the People's Rule 702 Motion seeks an *in limine* determination on the admissibility of the proposed testimony of Karla M. Digirolamo ("Ms. Digirolamo"). Through Ms. Digirolamo, the People seek to introduce opinion testimony regarding ". . . the dynamics of domestic violence in the present case and in understanding the victim's reaction as characteristic of victims of domestic violence."[11] Defendant opposes the motion on the grounds that the testimony is not relevant,

---

[11] "A Summary of Karla Digirolamo's Expert Testimony", which was appended to the People's Rule 702 Motion, at p. 3.

unduly prejudicial, and constitutes inadmissible opinion testimony under Rules 402, 403, and/or 702 of the Federal Rules of Evidence, respectively. The Court believes that the proposed testimony is relevant and not unduly prejudicial. However, a hearing is needed after the fact witnesses testify to determine whether there is a sufficient foundation to admit this testimony under Rule 702.

**1. Ms. Digirolamo's testimony is relevant under FED. R. EVID. 402.**

Defendant first argues that the proposed expert testimony fails the relevancy requirement of FED. R. EVID. 402. In support of his opposition, Senator Donastorg reasserts the position taken in his May 3, 2010 motion *in limine*, to wit, that, in light of her March 8, 2010 statement and her subsequent assertions that this document reflects the true circumstances of the January 28, 2010 incident, the People cannot call Ms. K.E. to the stand and then impeach her trial testimony with her January 29, 2010 statement. Therefore, according to Defendant, Ms. Digirolamo's testimony cannot possibly be relevant for the purpose of providing the jury with a basis to put the differences between Ms. K.E.'s January 29, 2010, and March 8, 2010 statements into context. As he avows, ". . . an out-of-court unsworn statement may not be used as substantive evidence to convict" because it is hearsay.[12] Three reasons undermine Defendant's contention.

First, as the Court stated at the June 7, 2010 hearing, until Ms. K.E. takes the stand at trial, neither Defendant nor the People know what will be her testimony. It may be that her trial testimony matches one of the two prior statements, or it may be inconsistent with both statements, or it may encompass portions of the two statements. Also, the questions posed by counsel will affect the scope of her testimony, as a trial witness only responds to the questions asked. It is her live testimony which will determine whether either party will seek to impeach her and which statement will be used to accomplish that goal, if necessary. To the extent that the parties insist that Ms. K.E.'s trial testimony will definitely repeat either prior statement, the Court reiterates that neither party nor the Court has the clairvoyance to make such a determination almost two (2) months in advance of trial.

Second, pursuant to Section 15(b) of Act No. 7161 (Bill No. 28-0180), the Legislature of the Virgin Islands adopted the Federal

---

[12] Defendant's Opposition to the People's Rule 702 Motion at p. 4.

Rules of Evidence to govern in judicial proceedings in territorial courts. A review of those rules reveals that, not only is there nothing inherently improper with the People impeaching their own witness, this strategy is expressly authorized by Rule 607 of the Federal Rules of Evidence, which very directly states "The credibility of a witness may be attacked by any party, **including the party calling the witness**." (Emphasis added).

Third, Senator Donastorg's objection to the Government calling Ms. K.E. as a witness and then impeaching her with the January statement is belied by the plain language of 14 V.I.C. § 19[13], which specifically provides the procedure by which prior inconsistent statements of witnesses, oral or written, sworn or unsworn, are not inadmissible under the hearsay rule and may be admitted into evidence for impeachment and/or substantive purposes. It appears that Senator Donastorg's argument is premised on the incorrect belief that the Federal Rules of Evidence govern this scenario.

Under Rule 801(d)(1) of the Federal Rules of Evidence[14], the January 29, 2010 statement of Ms. K.E. would be considered hearsay because it was not given under oath or subject to cross-examination. As the Court noted above, Act No. 7161 (Bill No. 28-0180), and in particular Section 15(b) thereof, repealed the Uniform Rules of Evidence in the Virgin Islands and adopted the Federal Rules of Evidence as the rules of evidence for this Court. However, Act No. 7161 did not repeal the provisions of Title 14, Chapter 1, Subchapter IIA, Virgin Islands Code,

---

[13] 14 V.I.C. § 19 provides, "Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing or trial to explain or deny the prior statement, the court shall allow either party to prove that the witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial. Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement."

[14] FED. R. EVID. 801(d)(1), which governs prior inconsistent statements in proceedings in the federal courts, states "The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person. . . ."

where 14 V.I.C § 19 is located. It is a fundamental tenet of statutory construction that repeal of statutes by implication is strongly disfavored. *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth*, 49 V.I. 478, 486 (V.I. 2008). In addition, it is settled that specific statutory provisions take precedence over general provisions which cover the same subject matter. *Id.* at 485. While Act No. 7161 addresses the rules of evidence generally, 14 V.I.C. § 19 specifically speaks to how prior inconsistent statements of witnesses may be used as evidence. There is no evidence that the Virgin Islands Legislature repealed, or intended to repeal, 14 V.I.C. § 19 when it passed Act 7161. Furthermore, "The clear intent of Superior Court Rule 7 is for locally promulgated rules to govern in the Superior Court, regardless of whether adopted by the Legislature or the Superior Court." *Phillips v. People of the Virgin Islands*, 51 V.I. 258, 275 (V.I. 2009). Taking all of the foregoing precedents together, this Court holds that in criminal actions in the Superior Court 14 V.I.C. § 19 is the provision which governs the use of prior inconsistent statements of witnesses and not FED. R. EVID. 801(d)(1).

■■■■■■■ If the prerequisites of 14 V.I.C. § 19 are met, the January 29, 2010 statement may be used as impeachment or substantive evidence under Virgin Islands law, and the content thereof is plainly relevant to this case. Thus, the testimony of Ms. Digirolamo regarding the behavior of domestic violence victims may give context to the contradictions between Ms. K.E.'s January Statement and her March Statement and, therefore, is relevant evidence. *See, State v. Clark*, 83 Haw. 289, 926 P.2d 194, 203-204 (1996); *People v. Lafferty*, 9 P.3d 1132, 1135 (Colo. Ct. App. 1999). *Accord, Varelas v. Adams*, No. C 08-03505, 2010 U.S. Dist. LEXIS 50864 *33 (N.D. Cal. Apr. 30, 2010). Indeed, even if used solely for purposes of impeachment, evidence relating to the credibility of witnesses is relevant under FED. R. EVID. 401 because ". . . the impeaching material would provide valuable aid to the jury in assessing the defendant's credibility." *See, Oregon v. Hass*, 420 U.S. 714, 722, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). Because this type of evidence is relevant, it is generally deemed to be admissible under both 14 V.I.C. § 19 and FED. R. EVID. 402.

**2. Ms. Digirolamo's testimony is not unduly prejudicial under FED. R. EVID. 403.**

Defendant additionally posits that Ms. Digirolamo's testimony would be unfairly prejudicial under FED. R. EVID. 403 because it is likely to lead

37

the jurors to reach their decision based on an improper basis. In support of this proposition, Mr. Donastorg cites to *Donald Faigman and Amy Wright, The Battered Woman Syndrome in the Age of Science*, 39 ARIZ. L. REV. 67 (1997). This article argues, in part, that the use of Battered Woman Syndrome ("BWS") ". . . raises substantial questions of fairness under both the specific rules against character evidence and the general principles of the evidence rules." *Id.* at 94. The critique further contends that many courts have recognized that BWS "does not contain overwhelming probative value," and that it "comes perilously close to testimony affirming the credibility of a witness, a use generally prohibited by courts." *Id.* at 98.

However, the "Summary of Karla Digirolamo's Expert Testimony", which was appended to the People's Rule 702 Motion indicates that her testimony reaches the broader topic of the conduct and reactions of victims of domestic violence, including, but not focusing specifically on, BWS. Thus, Defendant's focus solely on BWS does not take into account the remainder of Ms. Digirolamo's proposed testimony. Also, courts have accepted expert or opinion testimony on the topic of the behavior of victims of domestic violence as being more probative than prejudicial. *E.g., People v. Georgia*, 74 P.3d 349 (Colo. Ct. App. 2003) (similar evidence more probative than prejudicial in case where defendant was charged with attempted murder, assault and related charges); *Odom v. State*, 711 N.E.2d 71 (Ind. Ct. App. 1999) (similar evidence more probative than prejudicial when defendant facing charges of intimidation). Moreover, as noted below, the final decision on the admissibility and scope of the opinion testimony of Ms. Digirolamo will hinge on the factual evidence adduced at trial, in order to ensure that the testimony will be helpful to the jury. Therefore, at this time a declaration by this Court that the prejudice occasioned by her testimony substantially outweighs its probative value would be premature.

Senator Donastorg's reliance on the writings of other persons who may qualify as experts but who have a different view of BWS and similar theories does not make Ms. Digirolamo's testimony irrelevant, unreliable, or unduly prejudicial. Defendant may, in his discretion, find his own qualified expert to provide opinion testimony to counter that of Ms. Digirolamo at trial and allow the jury he has demanded to determine the credibility and weight of any conflicting testimony. *See, Benedict v.*

*United States*, 822 F.2d 1426 (6th Cir. 1987).[15] It is settled that it is the province of the jury to weigh conflicting testimony. *Joseph v. Gov't of the Virgin Islands*, 50 V.I. 530, 542 (D.V.I. App. Div. 2008) (citing *Gov't of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3rd Cir. 1995)). *See also, Kieffer v. Blue Seal Chemical Co.*, 196 F.2d 614, 615 (3rd Cir. 1952) ("The resolving of the conflicting theories presented by experts for each side was a matter for the jury.") Given the foregoing, the Court cannot conclude at this juncture in the proceedings that the proposed testimony of Ms. Digirolamo should be declared inadmissible on the ground of undue prejudice.

### 3. Propriety of the proposed testimony under FED. R. EVID. 702.

The People move for the admission of Ms. Digirolamo's expert testimony pursuant to Rule 702 of the Federal Rules of Evidence, which provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

The decision to admit or exclude opinion testimony under Rule 702 rests in the sound discretion of the trial court. *Gov't of the Virgin Islands v. Jackson*, 47 V.I. 123, 125 (Super. Ct. 2005). The duty of the court is to act as a "gatekeeper" and only allow such opinion testimony as will be of assistance to the trier-of-fact. *Id.* Rule 702 embodies a "liberal policy of admissibility" when the proposed expert testimony has the potential to assist the trier-of-fact. *United States v. Schiff*, 602 F.3d 152, 173 (3rd Cir. 2010) (citations omitted).

In order for testimony to be admissible under FED. R. EVID. 702, "(1) the witness must be an expert; (2) the procedures and methods used must be reliable; and (3) the testimony must 'fit' the factual dispute at

---

[15] ". . . the Benedicts had a right to counteract the opposing expert's testimony by putting on their own expert to controvert the accuracy and reliability of his methodology and data." 822 F.2d at 1429.

issue so that it will assist the jury." *Saldana v. Kmart Corp.*, 43 V.I. 361, 365, 260 F.3d 228, 232 (3rd Cir. 2001) (citations omitted). *See also*, *Etienne v. United Corp.*, 44 V.I. 113, 119 (Terr. Ct. 2001). In short, FED. R. EVID. 702 requires that the proposed testimony is supported by "good grounds," that it is relevant to the issue and that the reasoning and methodology underlying the proposed testimony can be applied to the facts in issue. *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ("*Daubert*").

In *Daubert*, the Supreme Court declined to set a definitive test for judges to follow when assessing whether to allow expert testimony. *Daubert*, 509 U.S. at 592. However, the Court did state that some "general observations are appropriate:" Namely: (1) that the theory can be and has been tested; (2) that the theory has been subjected to peer review and publication; and (3) that the theory has been generally accepted. *Id.* at 593. Based upon the documents submitted in support of and in opposition to the People's Rule 702 Motion, and taking into account the foregoing guidelines, the Court is of the view that Ms. Digirolamo qualifies as an expert and the proposed testimony is sufficiently reliable. However, until a solid factual record has been established under oath, the Court is not in a position to determine whether there is a sufficient nexus between the underlying factual predicate and the proposed expert testimony.

### A. Karla Digirolamo meets the requirements for an expert under Rule 702.

In his opposition to the People's Rule 702 Motion, Senator Donastorg does not challenge the qualifications of Ms. Digirolamo to testify about domestic violence and its impact on victims. The curriculum vitae of Ms. Digirolamo demonstrates that she has worked in the field of domestic violence in various capacities since 1981. The documents submitted by the People also indicate that she has been called as an expert witness or consultant in several court cases. Though the cases in which she participated are not listed, the People cite to a published case in which she was found to be an appropriate expert witness and testified at trial on issues similar to those proposed in this case. *See*, *Commonwealth v. Goetzendanner*, 42 Mass. App. Ct. 637, 679 N.E.2d 240 (1997). This Court also notes that she was designated as an expert witness in a case in this jurisdiction for purposes of assisting a trial judge in the sentencing phase of a trial involving domestic violence issues. *See*, *United States v.*

*Williams*, Crim. No. 1999-25, 2000 U.S. Dist. LEXIS 22677 (D.V.I. May 10, 2000).

 The papers submitted by the People also present a list of publications and presentations she has authored or given in the domestic violence field, and note that she has degrees in both psychology and public administration. A person may be qualified as an expert when he or she demonstrates a ". . . broad range of knowledge, skills, and training", and it is not necessary for the proposed expert to meet stringent requirements. *United States v. Velasquez*, 33 V.I. 265, 274, 64 F.3d 844, 849 (3rd Cir. 1995). Under this standard, and taking all of the factors presented together, Ms. Digirolamo is qualified to serve as an expert witness in the area of domestic violence victim behavior.

### B. The proposed opinion testimony of Ms. Digirolamo is reliable under FED. R. EVID. 702.

Senator Donastorg also argues that the proposed testimony of Ms. Digirolamo is not reliable under Rule 702 of the Federal Rules of Evidence and *Daubert* because her opinions lack "any factual foundation for admissibility". Specifically, he contends that she has not interviewed the witness to determine whether she suffers from BWS and there is no evidence that he and Ms. K.E. had the type of relationship that could lead to BWS.[16] According to Senator Donastorg, the proposed testimony is "subjective belief and unsupported speculation" and "junk science at its worst and it must be excluded."[17] Defendant finally urges that the People fail to meet their burden under *Daubert* because BWS is not generally accepted in the "relevant scientific field" or is not "put to non-judicial use."[18]

 In addition to relying on the law review articles cited above, Defendant asserts in his opposition to the People's motion that few courts have admitted the type of testimony proposed by the People. To the contrary, independent research reveals that numerous courts around the country have found expert testimony on the behavioral and emotional characteristics common to victims that have been battered or subjected to

---

[16] Defendant's Opposition to the People's Rule 702 Motion at p. 11-13.

[17] *Id.*

[18] *Id.* at 9.

domestic violence, "to have a scientific basis for admissibility" and admitted the same in various types of cases. *People v. Ellis*, 170 Misc. 2d 945, 650 N.Y.S.2d 503, 504 (Sup. Ct. 1996). *Accord, Varelas v. Adams*, No. C 08-03505, 2010 U.S. Dist. LEXIS 50864 (N.D. Cal. Apr. 30, 2010); *State v. Richardson*, No. L-07-1214, 2010 Ohio 471, 2010 Ohio App. LEXIS 389 (2010); *Addison v. State*, 188 Md. App. 165, 981 A.2d 698 (2009), *cert. denied*, 412 Md. 255, 987 A.2d 16 (2009); *State v. Coleman*, No. 27254-1-III, 2009 Wash. App. LEXIS 2821 (Wash. Ct. App. Nov. 10, 2009); *People v. Riggs*, 44 Cal. 4th 248, 79 Cal. Rptr. 3d 648, 187 P.3d 363 (2008), *cert. denied sub nom. Riggs v. California*, 129 S. Ct. 2386, 173 L. Ed. 2d 1302 (2009); *Gonzalez-Valdes v. State*, 834 So.2d 933 (Fla. Dist. Ct. App. 2003); *Commonwealth v. Goetzendanner*, 42 Mass. App. Ct. 637, 679 N.E.2d 240 (1997). Indeed, Defendant's argument that such testimony is "junk science" has specifically been rejected by at least one court. *State v. Clark*, 926 P.2d at 204.

█ In addition, Defendant's argument that Ms. Digirolamo has not interviewed Ms. K.E. and cannot diagnose her as suffering from BWS does not make the proposed testimony unreliable. Numerous courts have held that it is appropriate to allow expert testimony about the behavior of victims of domestic violence even though the expert witness has not, or cannot, diagnose the subject with BWS. *E.g., State v. Townsend*, 186 N.J. 473, 897 A.2d 316, 329-331 (2006) (citing cases from fourteen different jurisdictions reiterating the same proposition). In this case, Ms. Digirolamo would not be allowed to offer testimony that Ms. K.E. is a victim of domestic violence, as that is a fact determination to be made by the jury after hearing all of the evidence. *See, Varelas v. Adams*, 2010 U.S. Dist. LEXIS at *37. In light of the plethora of cases finding testimony similar to that which the People seek to introduce via Ms. Digirolamo to be reliable, the Court agrees that such testimony passes this prong of the FED. R. EVID. 702 test.

### C. A hearing is necessary to verify that Ms. Digirolamo's testimony will assist the jury as the trier-of-fact.

Senator Donastorg insists that Ms. Digirolamo's testimony cannot be helpful to the jury for the same reasons that he claims that said testimony is unreliable. The People counter that the proposed expert testimony is relevant under FED. R. EVID. 402 and 702, because it will help explain Ms. K.E.'s behavior, such as her provision of conflicting statements on

the same incident, to the jury. The People argue this information will be helpful to the jury because a domestic violence victim's behavior is often difficult for laypeople to understand. In the view of the People, Ms. Digirolamo's testimony will prevent the laypeople that will make up the jury from relying on myths or substituting their own uninformed judgments regarding victims of domestic violence. The Court concurs with the several courts which have addressed this issue and concluded the nature and dynamics of domestic violence and the reactions and responses of victims ". . . may be puzzling or appear counterintuitive to lay observers." *State v. Searles*, 141 N.H. 224, 680 A.2d 612, 614 (1996) (citations omitted). These courts have concluded "the pattern of behavioral and emotional characteristics common to the victims of battering lies beyond the ken of the ordinary juror and may properly be the subject of expert testimony." *Goetzendanner*, 679 N.E.2d at 244. *Accord, Townsend*, 897 A.2d at 327 ("We have no doubt that the ramifications of a battering relationship are beyond the ken of the average juror.").

In her January Statement Ms. K.E. claimed that, among other things, Defendant forcefully pulled her from the passenger seat across the driver's seat and threw her on the ground. Ms. K.E. also claimed that Defendant's vehicle came into contact with her and knocked her to the ground a second time when he drove off. Approximately one month later, Ms. K.E. issued her March Statement in which she recanted most of her January Statement and claimed that Defendant did nothing wrong to her. Ms. Digirolamo's testimony could be helpful by providing the jury with a possible explanation of these circumstances and assist them in deciding how much weight to give to Ms. K.E.'s trial testimony, as well as her prior statements if they are admitted into evidence.

■■ ■■ However, as previously discussed, at this juncture Ms. K.E. has not yet testified under oath and the factual predicate for the admission of Ms. Digirolamo's testimony has not been established. In the absence of her testimony at this point in time, the Court cannot make any determination of whether Ms. Digirolamo's testimony "fits" with the facts of the case. As part of its gatekeeper duty, this Court must be satisfied that there is a sufficient nexus between the fact testimony and the proposed opinion testimony. *See, United States v. Schiff*, 602 F.3d at 173 ("In assessing whether an expert's proposed testimony 'fits,' we are asking " 'whether [the] expert testimony proffered . . . is sufficiently tied to the

facts of the case that it will aid the jury in resolving a factual dispute.' ") (citing *Daubert*, 509 U.S. at 591); *Etienne v. United Corp.*, 44 V.I. at 124. While the trial court need not have a Rule 104(a) hearing for every *Daubert* motion, such a hearing is strongly recommended. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3rd Cir. 1999). Moreover, "A trial setting normally will provide the best operating environment for the triage which *Daubert* demands. . .". *Id.* at 418 (quoting *Cortes-Irizarry v. Corporacion Insular de Seguros*, 111 F.3d 184, 188 (1st Cir. 1997)).

As noted in footnote 2 above, the schedules of the Court, the parties and their counsel, do not allow for a hearing to be scheduled between now and the trial date of September 20, 2010. Moreover, *Padillas v. Stork-Gamco, Inc. supra*, clearly suggests that the most appropriate time for a hearing is during the trial of this cause. Therefore, the Court will reserve its decision on whether there is an adequate "fit" between the factual testimony to be adduced at trial and the proposed testimony of Ms. Digirolamo. At the conclusion of the presentation of the fact witnesses by the prosecution, the Court will convene a hearing pursuant to FED. R. EVID. 104(a), without the presence of the jury, to determine whether sufficient facts have been presented to justify the admission of Ms. Digirolamo's opinion testimony and the scope thereof. The parties are instructed to be prepared to discuss any concerns they may have about this procedure at the joint final pretrial conference set for September 17, 2010.

## III. Conclusion.

Although this Court has the inherent authority to dismiss criminal charges on the basis of extreme governmental misconduct, the documents submitted by Defendant do not establish that the ultimate remedy of dismissal is appropriate in this case. Additionally, while Karla Digirolamo has sufficient qualifications to serve as an expert witness in this case, and her testimony regarding the behavior of victims of domestic violence and/or battered woman syndrome may be of assistance to the jury, a final determination must await a hearing at the conclusion of the fact testimony at the trial of this case. Therefore, Defendant's Motion to Dismiss will be denied and the People's Rule 702 Motion will be granted in part, subject to the findings of this Court at the future Rule 104(a) hearing. An appropriate order will be entered herewith. ·